[Civ. No. 5341.   Fourth Dist.   Mar. 4, 1957.]

WILLIAM M. DAVIS, Appellant, v. VERNON JOSEPH, Respondent.

Harrison W. Call for Appellant.

Vizzard, Baker & Sullivan for Respondent.

GRIFFIN, J.—In this action for claim and delivery of numerous articles of personal property (oil and water-well drilling equipment) including two trucks on which it was mounted, plaintiff and appellant alleged ownership, right of possession, and that defendant and respondent wrongfully came into possession of it on August 5, 1954, and unlawfully retained possession of it.  Defendant answered, denied generally the allegations of the complaint and alleged he was in rightful possession of the property; that plaintiff wrongfully

took possession of it by means of claim and delivery and that one Janie B. McCarty was the owner of it; that the property was actually worth $20,000; that defendant was purchasing said equipment for $15,000 under a written agreement with the owner dated May 29, 1951, payable $2,000 down and $300 per month; that he had paid her $12,100 on the purchase price and that he was not in default. As a second affirmative defense it is alleged that there was then pending an action between this defendant and Janie B. McCarty, et al., in Kern County; that it involved the same personal property and plaintiff herein had knowledge of such litigation. Defendant seeks affirmative relief requiring plaintiff to return said personal property to defendant or pay him $12,100 plus $1,500 per month rental value.

It appears that on May 29, 1951, in Utah, plaintiff Davis, who resides in Sacramento, California, together with defendant Joseph, entered into a conditional sales lease option contract, in Joseph's name, with one Janie B. McCarty, registered owner of the trucks, for their purchase, together with the equipment mounted thereon. The legal owner was then Ralph Waters. The option provided that vendor retain title until the total purchase price was paid. About this time plaintiff and defendant entered into some partnership agreement whereby each agreed the other owned a one-half interest in said lease-option and that defendant would pay plaintiff one dollar for each foot of wells drilled. Plaintiff claims it also included an agreement to pay him 50 per cent of the profits. The testimony is in conflict as to which partner furnished the down payment and made certain other payments on the contract. At least plaintiff and defendant operated the rig until December, 1951. Plaintiff claims he was unable to locate the rig operated by defendant and finally discovered it in some town in Nevada and he immediately, on May 28, 1952, filed suit there against defendant claiming a partnership dissolution and seeking an accounting. Defendant filed an answer and counterclaim. Plaintiff claims defendant then removed the rig to California and later plaintiff discovered it here on May 26, 1953, filed a similar suit against defendant in Kern County and sought an accounting and the appointment of a receiver. (Action No. 60615.) On June 15, 1953, defendant answered, admitted the agreement of partnership in 1951, and claimed he furnished one-half of the down-payment on the purchase contract; that the plaintiff orally agreed to pay defendant $500 per month for

his services to the partnership, and that plaintiff also agreed to devote his full time to securing contracts for the drilling of wells but failed to do so and performed no services under the partnership agreement. He admitted the filing of the previous action in Nevada, and claimed that plaintiff therein declared that the partnership had been dissolved; that the rig was then in the jurisdiction of that court and that said action is still pending. In addition to general relief judgment was sought for defendant declaring that plaintiff had breached the agreement with defendant. A receiver was appointed. It then appears that on August 11, 1953, by proper order, Janie B. McCarty, lessor, appeared as intervenor in said action, set up the lease agreement, and alleged that $600 was due on the installments for May and June, 1953. She also alleged other claimed breaches of the lease and sought possession of the property. Defendant alleged he had made all payments due, totaling $10,900 on said contract, up to the time the receiver had been appointed. On September 30, 1953, there was filed in said action a stipulation of respective counsel for all parties that the action be dismissed with prejudice; that defendant Joseph pay certain charges; that "the partnership alleged to have existed between the plaintiff and the defendant Joseph shall be deemed to have been dissolved as of May 28, 1952"; that the action in Nevada be dismissed, and that plaintiff waives any right, title or interest which he might have or asserts in and to any partnership that may have existed between them, and to the personal property described in the lease contract; that Joseph assume all obligations due under it (approximately $3,328.98); and that the equipment be delivered over to Joseph. Dismissals were entered accordingly.

It appears from defendant's testimony in the present action that thereafter, about October 22, 1953, he and Janie B. McCarty entered into some oral partnership agreement for the use of this equipment in the drilling of water wells. Defendant testified the court was about to sell the rig for bills contracted and unpaid, for $5,000 to a Mr. Bradshaw, in Utah; that both agreed that if defendant would pay these bills they would each own a "fifty-fifty partnership in the equipment" and each was to put up $500 to pay off Mr. Waters, the legal owner, but Mrs. McCarty failed to make such payment. This partnership arrangement continued for some time and subsequently Mrs. McCarty, on March 8, 1954, took exclusive possession of the rig, the main asset

of the partnership, without notice to defendant of any default, and stored it in the Petroleum Supply Company yard in Bakersfield under a claim of breach of the partnership agreement. On March 16, 1954, Joseph brought an action against her (Case No. 62495) to recover possession of the rig and outfit, for dissolution of their partnership, and asked for the sale of the property. He sought a restraining order from any disposition of the property pending trial of the action. A temporary restraining order was issued. On the hearing the rig was released to Mrs. McCarty, and the restraining order dismissed on condition she give a bond in the sum of $7,500. No bond was posted. By answer, Mrs. McCarty denied such a partnership, denied that the drilling rig was an asset of the partnership, and claimed it as her sole and separate property. The parties, through their attorneys, then entered into some negotiations for settlement for $4,000 (the balance due on the contract), $3,000 to be paid to Mrs. McCarty and $1,000 to Waters, the legal owner, at $200 per month, and a contract was drawn accordingly. A check for $200, the first payment, was left with Mrs. McCarty's attorney. The contract of purchase was signed by Vernon Joseph but later Mrs. McCarty refused to sign it although her attorney testified in this action that she agreed to its terms in open court and that the restraining order be dissolved. The restraining order was dissolved by minute order of the court. This attorney was subsequently substituted out of the case by Mrs. McCarty, and no other written order was entered in the minutes. Mrs. McCarty admitted she formed some sort of a partnership agreement with Joseph at the time indicated but claimed Joseph never performed according to the agreement. She denied making this settlement according to the terms set forth in the new conditional sales contract dated July 20, 1954.

Apparently, under the belief that the new contract agreed upon would be signed, and upon order of the respective attorneys, the storage keeper released the outfit to the defendant Joseph who, in turn, leased it for $750 per month, and it was removed to San Benito County for drilling purposes. It then appears that within a month Mrs. McCarty contacted plaintiff Davis and informed him the rig was for sale and she thought he would find it in the storage yard in Bakersfield; that she had not substituted her new lawyer in the case at that time; that she told Davis and his lawyer about this pending lawsuit; and that Davis said he searched

the title at the Motor Vehicle Department and found Waters to be the legal owner and Mrs. McCarty the registered owner. Plaintiff's bank handled the transaction and the legal title to the two trucks passed to plaintiff. Plaintiff testified that he thought the outfit was in storage in Kern County when he bought it; that Mrs. McCarty told him she had repossessed the outfit and said something about the lawsuit pending between her and Joseph but they talked to a lawyer about it; that he, Davis, did not talk to defendant Joseph, his former partner, about the title to the trucks or their location, but on investigation he learned they had been removed to San Benito County, and he and the sheriff there made search for them and found them being operated there. He further stated he believed the original "option sale lease agreement" was never placed on record with the Motor Vehicle Department. He then brought this action for claim and delivery against defendant, filed the necessary bond and the sheriff took possession. No redelivery bond was filed and plaintiff then sold the rig to a drilling company in Utah for $11,000 (Bradshaw). After transfer of the action to Kern County, trial was had there and the court found generally against the plaintiff and in favor of defendant on his affirmative defenses; that defendant had complied with all of the provisions of the lease sale agreement at that time; that action Number 62495 is still pending and involved the subject matter here in dispute and that plaintiff had notice of this litigation; that the reasonable value of the outfit was $15,000 and defendant's equity therein was $12,100.

It is plaintiff's position on this appeal that he was a bona fide purchaser, in good faith and for a valuable consideration, of the trucks and rigging and entitled to possession as such; that he made all reasonable inquiry and search of the records as to title and ownership; that he was told by Mrs. McCarty that she had repossessed said outfit and he believed she was entitled to transfer her title as registered owner; that defendant could have put everyone on notice of his claim by restraining the registrar of Motor Vehicles from transferring title to the trucks pending the outcome of the suit, and therefore he should be estopped from raising the question of equitable title, citing such authority as *Fulkerson* v. *Stiles,* 156 Cal. 703 at page 706 [105 P. 966, 26 L.R.A.N.S. 181]; *Davis* v. *Ward,* 109 Cal. 186 [41 P. 1010, 50 Am.St.Rep. 29]; Pomeroy's Equity Jurisprudence, 4th ed., volume 2, section 735, page 1509 et seq.; Vehicle Code, section 186; *Parke* v.

*Franciscus,* 194 Cal. 284, 292 [228 P. 435] ; *Bank of America* v. *National Funding Corp.,* 45 Cal.App.2d 320 [114 P.2d 49] ; *Coca Cola Bottling Co.* v. *Feliciano,* 32 Cal.App.2d 351 [89 P.2d 686] ; and *Moody* v. *Goodwin,* 53 Cal.App. 693 [200 P. 733].

It is defendant's contention that he held a valid equitable title to the drilling rig, trucks, and other personal property here involved; that such title will prevail except against a bona fide purchaser for value; and that under the evidence the court was justified in holding that plaintiff was not such a purchaser, citing such authority as *Bush* v. *Bank of America,* 1 Cal.App.2d 588 [37 P.2d 168] ; *Triggs* v. *Zicovich,* 117 Cal.App.2d 768, 771 [257 P.2d 60] ; *Gates* v. *Levers,* 108 Cal.App.2d 131, 133 [238 P.2d 143] ; and *Lynn* v. *Herman,* 72 Cal.App.2d 614 [165 P.2d 54].

The main distinction between the cases relied upon by plaintiff and the facts in the instant case is that in those cases the sale was to an innocent bona fide purchaser for value. Here we have a finding that plaintiff was not such a purchaser and that he knew of the existence of the unrecorded lease purchase agreement between Mrs. McCarty and defendant. In this connection it was shown that plaintiff originally entered into the agreement with her through his then partner, Joseph, and that this lease purchase agreement was unrecorded with the Motor Vehicle Department. He likewise knew of its existence when it was received in evidence in the action instituted by him in which Mrs. McCarty intervened. By the stipulation he had knowledge at that time that Joseph was not in default and for all intents and purposes was the equitable owner and purchaser of the trucks and rigging and entitled to the possession of them. When investigating the title at the time of his contemplated purchase of this outfit he made no inquiry of Joseph as to his claim to title, although he had been his previous partner and knew his mailing address in Bakersfield and knew the name and address of Joseph's attorney. When the rig was located and in operation in San Benito County he made no inquiry as to Joseph's claimed title to it but rested upon the motor vehicle registration and what he claimed Mrs. McCarty told him. Apparently he called upon his own lawyer in reference to the transaction, who had been previously told about the pending suit by Mrs. McCarty. In considering all the circumstances related the trial court was justified in finding that plaintiff was not an innocent purchaser for

value and without knowledge of defendant's claim of right to possession of the property. Our courts have frequently held that an unrecorded mortgage is not void as against a subsequent purchaser or encumbrancer who has actual knowledge of a previous lien, for the reason that he does not acquire his interest in good faith. (*Harms* v. *Silva,* 91 Cal. 636 [27 P. 1088] ; *Silverthorn & Sons* v. *Pacific Finance Corp.,* 133 Cal.App. 163 [23 P.2d 798] ; *Bush* v. *Bank of America,* 1 Cal.App.2d 588 [37 P.2d 168].)

It has been held that under section 186 of the Vehicle Code, pertaining to the transfer of title or any interest in a vehicle, a certificate of registration does not necessarily or conclusively establish true ownership. (*Gates* v. *Levers, supra; Logan* v. *Serpa,* 91 Cal.App.2d 818, 822 [206 P.2d 70] ; *Lynn* v. *Herman, supra; Henry* v. *General Forming, Ltd.,* 33 Cal.2d 223 [200 P.2d 785].)

Although in conflict, there was sufficient evidence to show that defendant was not in default in his contract at the time plaintiff filed his action for claim and delivery and plaintiff cannot claim title by virtue of his claim that defendant had breached the contract with Mrs. McCarty. It was not established, as a matter of law, that defendant was negligent in not recording his contract of purchase with the Motor Vehicle Department, or that he was estopped from claiming equitable title under it. (*Pike* v. *Rhinehart,* 112 Cal.App.2d 530, 533 [246 P.2d 963].) In fact, the findings are contrary to plaintiff's claim.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 1, 1957.