McDONALD'S CHEVROLET, INC. *v.* OTIS JOHNSON D/B/A JOHNNY'S CAR LOT

[No. 1-1077A245. Filed May 16, 1978.]

*Robert G. Leonard, Fitzpatrick, Chambers & Waller*, of Washington, for appellant.

*Glenn A. Grampp, Lopp, Lopp & Grampp*, of Evansville, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant McDonald's Chevrolet, Inc. (McDonald) appeals from the granting of summary judgment on the issue of liability and the award of $9,500 for breach of warranty of good title in the sale of a motor home by McDonald to plaintiff-appellee Otis Johnson (Johnson).

We affirm.

## FACTS

Sometime prior to March 1, 1974, W. A. Andres, of Fort Worth, Texas, purchased a motor home. On March 10, 1974, Andres rented his motor home, pursuant to the terms of a rental contract, for a period of thirteen days to one Phillip E. Robertson (whose actual name appears to have been Lewis E. Murphy). As McDonald aptly states in its brief, "Murphy drove off into the sunset never to be seen again by Andres."

Using the name L. E. Boggs, Murphy obtained an Alabama registration for the motor home sometime between March and July 1974.

On July 8, 1974, the State of Nebraska provided L. E. Boggs a certificate of title for the vehicle.

Title was transferred from L. E. Boggs to Lewis E. Murphy later that same month.

On September 5, 1974, Murphy wandered into McDonald's Chevrolet, Inc., located in Washington, Indiana, and purchased a 1974 truck and a 1973 fifth-wheel trailer for the price of $20,600; he was allowed $11,100 on the motor home, which was taken in trade after Murphy applied for an Indiana certificate of title for the motor home. Murphy paid McDonald $1,000 before he drove off into the sunset once again.

Johnson purchased the motor home from McDonald for $9,500 on September 20, 1974, for the purported purpose of reselling it from his own used car lot. McDonald provided Johnson a certificate of title for the vehicle on or about November 7, 1974.

On October 30, 1975, the Indiana State Police seized the motor home from Johnson and ultimately surrendered the vehicle to Andres' insurer, Foremost Insurance Company.

Investigation revealed later that Murphy apparently stole the serial number found on the motor home from a vehicle belonging to a Wichita Falls, Texas, dealer. That false identification number appeared on the documents Murphy obtained in Alabama, Nebraska, and Indiana.

Johnson filed suit against McDonald alleging breach of warranty of good title, and against Foremost Insurance Company to replevy the motor home. Johnson moved for summary judgment against McDonald, which the trial court granted December 7, 1976. After holding a hearing on the issue of damages, the trial court entered judgment in the amount of $9,500 for Johnson and against McDonald.

## ISSUES

McDonald raises three issues for review:

1. Is the judgment contrary to law?

2. Is the judgment contrary to the evidence?

3. Do genuine issues of material fact exist which make summary judgment improper?

*Issue One*

McDonald and Johnson agree that McDonald provided Johnson a warranty of good title.[1] McDonald argues that Murphy possessed voidable

---

1. See IC 1971, 26-1-2-312 (Burns Code Ed.).

title, that Murphy transferred good title to McDonald, and that McDonald transferred good title to Johnson.

IC 1971, 26-1-2-403 (Burns Code Ed.) (hereinafter referred to as 2-403) provides, in part:

"(1)   A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

(a)   the transferor was deceived as to the identity of the purchaser; or

(b)   the delivery was in exchange for a check which is later dishonored; or

(c)   it was agreed that the transaction was to be a 'cash sale'; or

(d)   the delivery was procured through fraud punishable as larcenous under the criminal law.

\* \* \*"

McDonald argues that the rental transaction entered into between Andres and Robertson (Murphy) was a "purchase" to which 2-403 applies. According to IC 1971, 26-1-1-201(32) (Burns Code Ed.),

"(32)   'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."

The rental contract entered into between Andres and Murphy created a bailment. *Light v. Lend Lease Transportation Co.* (1959), 129 Ind. App. 234, 156 N.E.2d 94.[2] A bailment involves no transfer of ownership; the bailee acquires only a possessory interest continuing for the period of bailment. *Finch v. McClellan* (1921), 77 Ind. App. 533, 130 N.E. 13. Because the transaction did give Murphy a possessory interest, the transaction satisifies the definition of a "purchase" and 2-403 is applicable.

McDonald argues next that (a) and (d) of subsection (1) of 2-403 sup-

---

2.   Also, the contract specifically states that a bailment is created by the transaction.

port its contention that it took good title from Murphy and passed good title to Johnson. McDonald acknowledges that Murphy could transfer good title to a good faith purchaser for value only if Murphy possessed voidable title. Our review, therefore, must address the question of whether Murphy held voidable title.

In the Indiana Comments, prepared by Professors Harry Pratter and R. Bruce Townsend, mention is made of the fact that the Uniform Commercial Code does not define "voidable title." We look to case law to determine the nature of Murphy's title.

In *Rocco v. Server* (1929), 89 Ind. App. 457, 165 N.E. 335, owner Rocco sold an automobile to purchaser O'Brien and received a worthless check in exchange. O'Brien sold to Wolf, and Wolf sold to Server. Server, a good faith purchaser for value, prevailed over Rocco because Rocco intended to sell and O'Brien's fraudulent act of giving a worthless check did not alter the fact that Rocco had intended to transfer ownership.

> As Judge Buchanan explained in *Sacks v. State* (1977), 172 Ind. App. 185, 360 N.E.2d 21, 28, referring to the Uniform Commercial Code.

> "* * *

> Section 2-403 was intended to determine the priorities between two *innocent* parties: (1) the original owner who parts with his goods through fraudulent conduct of another and (2) an innocent third party who gives value for the goods to the perpetrator of the fraud without knowledge of the fraud. By favoring the innocent third party, the Uniform Commercial Code endeavors to promote the flow of commerce by placing the burden of ascertaining and preventing fraudulent transactions on the one in the best position to prevent them, the original seller.

> * * * " (Original emphasis)

In the case at bar, however, Andres was a bailor and *not* a seller. Judge Nichols noted this important distinction in *Rocco*, at 89 Ind. App. 459-60:

> ". . . If, as held in *Patterson v. Indiana, etc., Securities Co.* (1921), 75 Ind. App. 489, 131 N.E. 19, appellant had only intended to part with the possession of the property, as for instance, by loan or hire, and O'Brien, having so obtained possession thereof, appropriated it to himself, he would have been guilty of a larceny, the transaction would have been void, and appellees would not have been protected as innocent purchasers, . . ."

McDonald insists that, because of the Uniform Commercial Code provisions, the case at bar should be resolved in the same manner as those cases involving sales of goods in exchange for worthless checks. We disagree. In 2-403 appears the statement that "a purchaser of a limited interest acquires rights only to the extent of the interest purchased." In *Rocco*, purchaser O'Brien purchased ownership interest; in the case at bar, Murphy purchased only a possessory interest continuing for a period of thirteen days.

Murphy possessed void title. Accordingly, Murphy could not convey good title to McDonald and McDonald could not convey good title to Johnson. McDonald breached its warranty of good title. The judgment is not contrary to law.

*Issue Two*

McDonald refers to evidence showing that it was diligent in protecting itself in dealing with Murphy, and that it qualifies as a good faith purchaser for value. McDonald argues that the judgment is contrary to the evidence.

Because Murphy did not possess voidable title, McDonald's status as a good faith purchaser for value is not determinative. The judgment is not contrary to the evidence.[3]

*Issue Three*

McDonald contends that genuine issues of material fact existed and made the granting of summary judgment improper. In carefully considering the argument McDonald provides, we are able to ascertain only three specific references to what McDonald finds to be genuine issues of material fact:

(1)  the intent of Murphy;

(2)  the credibility of Johnson because of conflicting testimony offered by Johnson and McDonald concerning Johnson's efforts to sell the motor home; and

---

3.  McDonald also refers to certain evidence concerning mileage on the vehicle. This evidence has no relevance in determining whether McDonald breached the warranty of good title.

(3)  the value of the motor home.

The first two items refer to matters not material to the issue of liability for breach of warranty. Without conflict the evidence shows that Murphy rented the motor home from Andres, Murphy did not return the motor home when the rental period ended, McDonald purchased from Murphy, Johnson purchased from McDonald, and Andres' insurer regained the motor home without paying compensation to Johnson. This evidence, as a matter of law, proved McDonald's breach of warranty of good title.

The record shows that on December 7, 1976, the trial court granted summary judgment only on the issue of liability. The following order book entry is dated January 21, 1977:

"Come now the parties and by agreement set said cause for hearing to determine amount of damages."

At the hearing, evidence was provided which showed that Johnson paid $9,500 for the motor home and invested approximately $1,200 — $1,500 in repairs before the Indiana State Police removed the vehicle from Johnson's possession. McDonald's witness, who saw the motor home, at a distance, only once after Johnson purchased it, estimated the motor home's value as $7,500 at the time Johnson lost possession.

IC 1971, 26-1-2-714 (Burns Code Ed.) provides, in part, as follows concerning a buyer's damages for breach in regard to accepted goods:

"* * *

(2)  The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3)  In a proper case any incidental and consequential damages under the next section may also be recovered. . . ."

The evidence adduced at the hearing supports the judgment rendered in the amount of $9,500.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 376 N.E.2d 106.