492 A.2d 917

**Adeorike Ogunsanya Duros INMI–ETTI**

v.

**Janes V. ALUISI, et al.**

**No. 1264, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 20, 1985.

294

Murray L. Deutchman, Rockville, for appellant.

Stuart M. Nathan, Asst. Atty. Gen., Towson (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee, James V. Aluisi.

Sander M. Davidson, Silver Spring (Gilbert L. Sussman, Seymour Korn and Korn & Rosenstein, Chartered, Silver Spring, on brief), for appellee, Pohanka Oldsmobile-GMC, Inc.

Argued before GARRITY, GETTY and KARWACKI, JJ.

KARWACKI, Judge.

Adeorike Ogunsanya Duros Inmi-Etti, the appellant, purchased a new automobile for $8,500 in cash, but much to her chagrin, lost both the car and her purchase price. She sued the parties allegedly responsible for her plight in the Circuit Court for Prince George's County and won her battle against David E. Butler, one of three defendants below, when she was awarded a default judgment for $8,200 in compensatory damages and $50 in punitive damages. Nevertheless, the appellant appeared to have lost the war when summary judgment was entered against her, in favor of the two remaining defendants (appellees herein), Pohanka Oldsmobile-GMC, Inc. (hereinafter "Pohanka") and James V. Aluisi, Sheriff of Prince George's County (hereinafter "Aluisi"). Based upon our review of the proceedings below, we conclude that the judgment in favor of Aluisi was proper, but that the appellant ought to have prevailed in her battle against Pohanka.

The facts material to this appeal and to disposition of this case generally are undisputed. The appellant, a native and resident of Nigeria came to the United States in June of 1981 to visit with her sisters, Adesola Dawodu of Takoma Park, Maryland and Tite Claxton of Hyattsville, Maryland. While here, the appellant decided to buy a car and have it shipped back to Nigeria. An acquaintance of the appellant's family, David E. Butler, offered to assist the appel-

lant in her purchase. With his aid the appellant placed an order for a new 1981 Honda Prelude on June 15, 1981, with Wilson Pontiac and Honda, Inc. of Silver Spring, Md. (hereinafter "Wilson Pontiac"). The purchase order, accompanied by appellant's deposit of $200, called for a purchase price of $8,500. Almost immediately thereafter the appellant returned to Nigeria, entrusting the cash balance of the purchase price to her sister, Ms. Claxton, with directions to complete the purchase when the automobile was available for delivery. On June 24, 1981, the sale was completed, and the automobile was delivered by Wilson Pontiac to the appellant's sisters who were accompanied by Butler. The automobile was driven by Butler to Ms. Dawodu's home. Within a few weeks a certificate of title for the automobile issued by the Motor Vehicle Administration in the name of the appellant was delivered to Butler by Wilson Pontiac. On August 18, 1981, Butler drove the automobile from Ms. Dawodu's home to a location in Marlow Heights, Maryland. Ms. Dawodu communicated with the appellant and learned that Butler's removal of the automobile was not authorized. She then applied for an arrest warrant charging Butler with theft. The warrant issued but was later quashed before it was executed.

While the arrest warrant was still outstanding, on October 1, 1981, Butler instituted a suit in the District Court of Maryland for Prince George's County and, at the same time, filed an application for an attachment on original process against the appellant's Honda, on the ground that the appellant was an absconding debtor. In the underlying suit, Butler complained that at the appellant's request he had purchased various items, including the 1981 Honda, for the appellant, but that the appellant had left this country without reimbursing him for the money he advanced on her behalf. The appellant received mailed notice of the suit in Nigeria in late November of 1981 and asked Ms. Dawodu to protect her interests. When no appearance was entered on behalf of the appellant in the district court action, however, that court granted Butler's motion for summary judgment

on January 6, 1982 and rendered judgment absolute in his favor on January 11, 1982. When Ms. Dawodu learned that judgment had been entered, she finally retained counsel for the appellant. A motion filed on the appellant's behalf on February 4, 1982 to set aside the judgment was granted. The case was then set for trial and ultimately dismissed.

Meanwhile, Butler's application for the attachment on original process had been granted, and the district court authorized the attachment of the 1981 Honda to issue on October 26, 1981. A deputy sheriff from Prince George's County located the vehicle in a driveway to a single family dwelling at 4306 Tounsley Avenue, Marlow Heights, Maryland on October 29, 1981. Finding no one at home within the dwelling, the deputy sheriff placed a copy of the writ of attachment and other related documents under the windshield wiper of the vehicle and left. The instructions given the deputy by Butler by means of a preprinted district court form were to levy upon the vehicle and "leave such property with the person in whose custody or possession it was found." At no time was a judicial sale conducted. The district court docket entries indicate that a motion to quash this attachment was granted on May 27, 1982.

On January 18, 1982, after summary judgment had been entered in favor of Butler in the district court, but before that judgment was set aside, Butler offered to sell the 1981 Honda owned by the appellant to Pohanka. He represented to the used car manager at Pohanka that he owned the automobile. Notwithstanding Butler's inability to produce a certificate of title for the car, Pohanka's manager agreed to purchase it for $7,200. That same day, Pohanka issued its check for $2,000 to Butler and agreed to pay him the $5,200 balance when Butler produced a certificate of title. The car was apparently left on Pohanka's lot in the meantime. Soon thereafter, Butler applied for a certificate of title for the appellant's automobile from the Motor Vehicle Administration. Butler solely supported his application with his sworn affidavit which represented:

I purchased a 1981 Honda Prelude (# JHMSN5222BCO67) in June 1981 to be sold in the Federal Republic of Nigeria. However the prospective buyer did not take delivery of this car because of no finance. Therefore, I went to court (Recorded in P.G. County Circuit) and was awarded the car on Jan. 6, 1982. I am presently paying thirty dollars $30.00 per day storage on this car in Marlow Heights, Md.

Because of the above stated reasons, I wish to obtain a title on this car in my name as soon as possible so that I can move the car and sell it.

I hereby certify that the above facts are true. [Signed] David E. Butler.

Amazingly, the Motor Vehicle Administration issued a certificate of title for the automobile to Butler based upon that affidavit. Armed with that certificate, Butler was paid the $5,200 balance of the agreed purchase price by Pohanka on February 8, 1982. Interestingly, Pohanka had already sold the automobile for $8,200 to another purchaser a week earlier.

The appellant sued Butler for conversion, malicious abuse of process, and wrongful attachment. She also sued Pohanka for conversion, and Aluisi for negligence. The lower court, as noted earlier, granted a default judgment against Butler because of his failure to plead to the appellant's declaration but granted summary judgments in favor of the two remaining defendants.

In this Court the appellant contends that:

I. The lower court erred when it denied her motion for summary judgment against Pohanka and instead entered summary judgment in favor of Pohanka because the undisputed material facts established Pohanka's liability to her for conversion, and that

II. The lower court erred in entering summary judgment in favor of Aluisi because there exists a material question of fact as to the negligence of Aluisi in the manner of the levy.

## I.

In order for the appellant to establish her right to summary judgment against Pohanka, we must be convinced that the record before the lower court contained undisputed facts and inferences properly deducible therefrom, demonstrating that Pohanka committed a conversion of the appellant's vehicle as a matter of law. Former Md.Rule 610 (new Md.Rule 2–501). In *Interstate Ins. Co. v. Logan*, 205 Md. 583, 588–89, 109 A.2d 904 (1959), the Court of Appeals summarized the law of conversion:

> [F]orcible dispossession of personal property is not essential to constitute a conversion. A "conversion" is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it. *Merchants' National Bank of Baltimore v. Williams*, 110 Md. 334, 72 A. 1114 [ (1909) ] *Martin v. W.W. Lanahan & Co.*, 133 Md. 525, 105 A. 777 [ (1919) ].

In *Merchants' National Bank of Baltimore v. Williams*, 110 Md. at 351–52, 72 A. 1114 the Court stated:

> Conversion, in the sense of the law of trover, consists either in the appropriation of the property of another, or in its destruction, or in exercising dominion over it in defiance of the owner's rights, or in withholding the possession from him under an adverse claim of title, and all who aid, command, assist, or participate in the commission of such unlawful acts are liable.

And in *Bender v. Bender*, 57 Md.App. 593, 599, 471 A.2d 335 (1984), we recognized that "unauthorized acts of use or ownership over the goods" constitute a conversion of that property. In the instant case it is undisputed that Pohanka exerted acts of use or ownership over the automobile in question by selling it on February 1, 1982. Nevertheless, our analysis cannot end here. We explain.

At common law the maxim was: "He who hath not cannot give (nemo dat qui non habet)." Black's Law Dictionary 935 (5th ed. 1979). Although at times the Uniform

Commercial Code may seem to the reader as unintelligible as the Latin phrases which preceded it, we find in § 2–403 of the Code a definite modification of the above maxim. That section states:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

(a) The transferor was deceived as to the identity of the purchaser, or

(b) The delivery was in exchange for a check which is later dishonored, or

(c) It was agreed that the transaction was to be a "cash sale," or

(d) The delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

(4) The rights of other purchasers of goods and of lien creditors are governed by the title on secured transactions (Title 9), bulk transfers (Title 6) and documents of title (Title 7).

Md.Code (1975), § 2–403 of the Commercial Law Article. *See generally* Hawkland UCC Series § 2–403:01 *et seq.* for an enlightening history of the origins of § 2–403.

In short, the answer to the appellant's claim against Pohanka depends on whether Butler had "void" or "voidable" title at the time of the purported sale to Pohanka. If Butler had voidable title, then he had the power to vest good title in Pohanka.[1] If, on the other hand, Butler possessed void title (i.e., no title at all), then Pohanka received no title and is liable in trover for the conversion of the appellant's automobile. Preliminarily, we note that there was no evidence that Butler was a "merchant who deals in goods of that kind" (i.e. automobiles). Md.Code, *supra*, §§ 2–403(2) and 2–104(1). Therefore the entrustment provisions of § 2–403(2)–(3) do not apply.

It has been observed that:

> Under 2–403, voidable title is to be distinguished from void title. A thief, for example, "gets" only void title and without more cannot pass any title to a good faith purchaser. "Voidable title" is a murky concept. The Code does not define the phrase. The comments do not even discuss it. Subsections (1)(a)–(d) of 2–403 clarify the law as to particular transactions which were "troublesome under prior law." Beyond these, we must look to non-Code state law.

J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 3–11 (2d ed. 1980) (footnote omitted). White and Summers further explain that: subsection (a) of § 2–403(1) deals with cases where the purchaser *impersonates* someone else; subsection (b) deals with "rubber checks"; subsection (c) deals with *"cash sales"*;[2] and subsection (d) deals with cases of *forged checks* and other acts fraudulent to the seller. *Id.* None of these subsections apply to the facts of the present case and we, there-

---

**1.** Inasmuch as we decide this case on the basis of a motion for summary judgment, and the evidence regarding Pohanka's good faith purchaser for value status is disputed, we must assume here that Pohanka was entitled to that status.

**2.** See *First National Bank of Ariz. v. Carbajal,* 132 Ariz. 263, 645 P.2d 778, 781–82 (1982).

fore, must turn to "non-Code state law" to determine whether Butler had voidable title.

Hawkland, *supra*, § 403:04, suggests that "voidable title" may only be obtained when the owner of the goods makes a voluntary transfer of the goods. He reaches that conclusion from the Code definitions of the words "delivery" and "purchase" and summarizes:

> Section 2–403(1)(d) does not create a voidable title in the situation where the goods are wrongfully taken, as contrasted with delivered voluntarily because of the concepts of "delivery" and "purchaser" which are necessary preconditions. "Delivery" is defined by section 1–201(14) "with respect to instruments, documents of title, chattel paper or securities" to mean "voluntary transfer of possession." By analogy, it should be held that goods are not delivered for purposes of section 2–403 unless they are voluntarily transferred. Additionally, section 2–403(1)(d) is limited by the requirement that the goods "have been delivered under a transaction of purchase." "Purchase" is defined by section 1–201(32) to include only voluntary transactions. A thief who wrongfully takes goods is not a purchaser within the meaning of this definition, but a swindler who fraudulently induces the victim to voluntarily deliver them is a purchaser for this purpose. This distinction, reminiscent of the distinction between larceny and larceny by trick made by the common law, is a basic one for the understanding of the meaning of section 2–403(1)(d).

Hawkland later states that the above language applies generally to § 2–403(1) and not merely to subsection (1)(d). *See* Hawkland, *supra*, § 2–403:05. The following cases and, indeed, (a) through (d) of § 2–403(1) seem to support Hawkland's theory that only a voluntary transfer by the owner can vest "voidable title" in a "person." In *Mowan v. Anweiler*, 454 N.E.2d 436 (1983) the Court of Appeals of Indiana held that the purchaser of an automobile gained title from his seller who had purchased the car with a bad check and then declared bankruptcy. The transfer from the

original owner to the bankrupt seller was clearly voluntary. That same court in *McDonald's Chevrolet, Inc. v. Johnson,* 176 Ind.App. 399, 376 N.E.2d 106 (1978), held that the purchaser of a motor home obtained no title because the motor home was stolen from its original owner by a person who was renting it for a short period of time. The court reasoned that the thief possessed void title (even though at the time of the theft he was in lawful possession), and his transfer to the defendant could not convey good title. Therefore, the plaintiff could recover for the defendant's breach of warranty of title. Another point of interest to the case *sub judice* was the fact that the defendant in *McDonald's Chevrolet* received from the thief, his seller, a facially valid title certificate. The court specifically noted that the defendant's diligence in checking the title and his status as a good faith purchaser were "not determinative" since his seller did not possess "voidable title."

In *Allstate Ins. Co. v. Estes,* 345 So.2d 265 (1977) the Supreme Court of Mississippi held that a good faith purchaser for value could not obtain title to an automobile from his transferor. The court explained:

Appellee contends that the facially valid Mississippi title, ultimately based upon an Alabama tag receipt issued pursuant to a forged bill of sale, resulted in "voidable title" in Howard [appellee's seller] with its concomitant power. The appellant, Allstate Insurance Company, who obtained valid title subsequent to paying the Florida dealer's loss, contends its ownership was unaffected by the intervening good faith "equities" of Estes [the appellee].

The dictate of Section 75-2-403 is clear. Regardless of the number of transactions, one cannot remove himself from the confines of the rule: A purchaser can take only those rights which his transferor has in the subject goods; a thief has neither title nor the power to convey such. *Gurley v. The Phoenix Ins. Co.,* 233 Miss. 58, 101 So.2d 101 (1958). Accordingly, title remained in Allstate

and the circuit court order granting possession to Estes was erroneous.

*Id.* at 266.

In *Schrier v. Home Indemnity Co.*, 273 A.2d 248 (D.C. App.1971) the District of Columbia Court of Appeals held that "voidable title" could only be obtained by "persons who have been entrusted with the possession of the goods they sell by consignors, creditors with unrecorded security interests, and certain other kinds of bailors." *Id.* at 250 (citation and footnote omitted). That court continued: "But a possessor of stolen goods, no matter how innocently acquired, can never convey good title." *Id.*

■ Without attempting to specify all the situations which could give rise to a voidable title under § 2–403 of the Uniform Commercial Code, we refer to the above authorities to support our conclusion that voidable title under the Code can only arise from a voluntary transfer or delivery of the goods by the owner. If the goods are stolen or otherwise obtained against the will of the owner, only void title can result.

■ Under the undisputed facts of the present case Butler possessed void title when Pohanka dealt with him. Although the record simply is not sufficient for us to decide whether Butler actually stole the appellant's vehicle, it is undisputed that the appellant at no time made a voluntary transfer to Butler. Thus, Pohanka obtained no title, and its sale of the vehicle constituted a conversion of the appellant's property. We believe the above analysis sufficient to impose liability upon Pohanka. We will nevertheless answer certain of Pohanka's collateral arguments.

We reject any notion that Butler obtained voidable title to the vehicle as a result of the attachment on original process carried out pursuant to former Maryland District Rules G40–60. Maryland District Rule G46, *infra,* (replaced by new Md.Rule 3–115) provided for the procedure which was followed in the instant case. It authorized the sheriff who was serving the writ of attachment to seize tangible person-

al property but allowed the sheriff, upon written instructions of the plaintiff, to "leave such property with the person in whose custody or possession it was at the time of the seizure." Section b. of this rule further required that, as a prerequisite to obtaining a judgment of condemnation nisi against the property attached, "the plaintiff shall satisfy the court by affidavit that he has notified the person having custody or possession of the property attached or has made a *bona fide* effort to locate and notify such person." It was only after a judgment of condemnation nisi and judgment of condemnation absolute had been entered against such property by the district court pursuant to M.D.R. G54 and G55, that the district court could have ordered a sale of the property under M.D.R. G60. In the case *sub judice,* the district court never entered a judgment of condemnation nisi or absolute against the appellant's Honda and consequently never ordered a sale of the automobile. Therefore, although the automobile was in *custodia legis* at all times during the transaction between Butler and Pohanka, the appellant's title thereto had not been divested, and no title thereto had been acquired by Butler. The only way Butler could have obtained title in the vehicle through those attachment proceedings was if he had purchased it at a judicial sale. That clearly never occurred.

■ Implicit in all that we have said so far is the fact that Butler did not obtain title (voidable or otherwise) merely from the fact that he was able to convince the Motor Vehicle Administration to issue a certificate of title for the automobile to him. Although "[a] certificate of title issued by the Administration is prima facie evidence of the facts appearing on it," Md.Code (1977, 1984 Repl.Vol.), § 13–107 of the Transportation Article, the erroneous issuance of such a certificate cannot divest the title of the true owner of the automobile. *Metropolitan Auto Sales v. Koneski,* 252 Md. 145, 249 A.2d 141 (1969); *Huettner v. Sav. Bank of Balto.,* 242 Md. 477, 219 A.2d 559 (1966); *Lawrence v. Graham,* 29 Md.App. 422, 349 A.2d 271 (1975).

■   Likewise, we find unpersuasive Pohanka's argument that since Butler had possession of the automobile and a duly issued certificate of title in his name, Pohanka should be protected as a "good faith purchaser for value" under § 2–403 of the Commercial Law Article, *supra.* Such status under that section of the Uniform Commercial Code is relevant in situations where the seller (transferor) is possessed of voidable title. It does not apply to the situation presented by the instant case where the seller had no title at all. *McDonald's Chevrolet,* 376 N.E.2d at 109–110.

■   Finally, whether Pohanka converted the vehicle with innocent intent is immaterial. The Restatement (Second) of Torts § 229 (1979) provides:

> One who receives possession of a chattel from another with the intent to acquire for himself or for a third person a proprietary interest in the chattel which the other has not the power to transfer is subject to liability for conversion to a third person then entitled to the immediate possession of the chattel.

Comment e. to § 299 explains:

> Under the rule stated in this Section, one receiving a chattel from a third person with intent to acquire a proprietary interest in it is liable without a demand for its return by the person entitled to possession, *although he takes possession of the chattel without knowledge or reason to know that the third person has no power to transfer the proprietary interest.* The mere receipt of the possession of the goods under such circumstances is a conversion.

(Emphasis added).

Accordingly, we shall reverse the summary judgment in favor of Pohanka and enter judgment in favor of the appellant against Pohanka for $8,200, an amount representing the agreed fair market value of the appellant's automobile at the time of its conversion, plus interest at 10 percent per annum from February 1, 1982, the date when Pohanka sold the automobile. Md.Rule 1075.

## II.

The appellant's claim against Sheriff Aluisi was based on his alleged negligence in executing the writ of attachment for her automobile. She argues that Aluisi and his deputy did not keep her vehicle in a safe and protected manner since "he made no attempt to determine if anybody was home, or who had custody or control over the car, and never did any follow-up to determine that the car was in fact in the custody of some person." The short answer to the appellant's argument is that the sheriff owes no duty to keep levied goods in a safe and protected manner when the party seeking the attachment has directed him to "levy and leave" and he has in fact relinquished custody over the goods.

Maryland District Rule G46, applicable at the time of the attachment, authorized the sheriff to follow a plaintiff's instruction to leave the property "with the person in whose custody or possession it was at the time of the seizure."[3]

---

**3.** Former Md.District Rule G46 read in its entirety:

a. *Seizure—Custody of Property.*

The writ of attachment may be served by posting a copy of the writ on real or leasehold property of the defendant or by seizing tangible personal property of the defendant. After seizure of tangible personal property, the sheriff may, upon written instructions of the plaintiff, leave such property with the person in whose custody or possession it was at the time of the seizure.

b. *Notice to Person Having Custody.*

The plaintiff shall make reasonable efforts to ascertain the person having custody or possession of such property and to notify such person that the property has been seized under an attachment on original process. No judgment of condemnation *nisi* shall be entered until the plaintiff shall satisfy the court by affidavit that he has notified the person having custody or possession of the property attached or has made a *bona fide* effort to locate and notify such person.

The numbering of the rules was changed in 1983 and this provision became Rule G49 with a minor amendment.

New Md.Rule 3–115 which replaced this former Rule incorporates by reference new Md.Rule 3–642 with regard to the procedure to be followed in the levy of an attachment before judgment on personal property. Md.Rule 3–642 contains language slightly different from former Rule G46 and permits the sheriff to "leave the levied property where found."

Furthermore, in *First National Bank v. Corporation Commission,* 161 Md. 508, 515, 157 A. 748 (1931), the Court of Appeals explained the justification for allowing the sheriff to "levy and leave":

> While the Maryland doctrine is not universally accepted, and there are weighty reasons why a levy of the writ should be accompanied or immediately followed by an interruption of the defendant's apparent ownership, and the time when the custody of law begins should be manifested by the relinquishment of the defendant's possession and by the assumption of exclusive possession by the officers of the law, yet there are countervailing practical considerations which, by tempering the harshness and lessening the injury of an immediate and peremptory removal of the goods and, nevertheless, warning the defendant of the imminent necessity to discharge his obligation, are of such public importance as to cause Mr. Freeman to write: "But in most states, it is clear that, if the levy is otherwise perfect, it will not be invalidated by leaving the property with the defendant. [Freeman on Executions (3rd ed. 1900)].

When the sheriff leaves the property where found in compliance with the instructions of the creditor he cannot be expected to protect the property.[4] Indeed, it is expected that the person in whose custody the property is left will have the power to use the levied upon property so long as that use is not inconsistent with the sheriff's right to take possession of the property and carry out an execution sale. *First Nat'l Bank,* 161 Md. at 516, 157 A. 748; Niemeyer & Richards, Maryland Rules Commentary 385 (1984).

In the case at hand the sheriff apparently did not follow the letter of section a. of Rule G46 since he did not leave the vehicle in the custody of a *person.* Instead,

---

**4.** Query whether the sheriff even has authority to take custody of the property when the creditor has instructed him to levy and leave. *See* Md.Code (1974) (1984 Repl.Vol.), § 2–301 of the Courts and Judicial Proceedings Article.

finding no one home, he merely placed the relevant papers on the vehicle and left.[5] New Maryland Rule 3–642 eliminates this problem because the sheriff may "levy and leave [the property] where found." Assuming, as the appellant argues, that the sheriff levied improperly by not leaving the vehicle in the custody of a person, the appellant is not in a position to complain. The very purpose of levying on property is to acquire rights in the property contrary to the debtor's interests by placing the property in *custodia legis*. If the sheriff fails to acquire those rights because of an invalid levy, he simply has not infringed upon the debtor's interest.

██ We have been cited no authority nor could we find any for the proposition that where the sheriff is directed "to levy and leave" he owes the *owner* a duty to maintain and protect the goods levied upon. We believe such a duty would run contrary to the very purpose of permitting the sheriff to leave the goods, and we refuse to create that duty. Absent a duty of care there can be no liability in negligence. *Read Drug & Chem. Co. of Balto. City v. Colwill Constr. Co.*, 250 Md. 406, 243 A.2d 548 (1968); *Jacques v. First Nat'l Bank*, 62 Md.App. 54, 488 A.2d 210 (1985). Consequently, summary judgment was properly entered in favor of Aluisi.

JUDGMENT IN FAVOR OF APPELLEE POHANKA OLDSMOBILE–GMC, INC., REVERSED; JUDGMENT AGAINST APPELLEE POHANKA OLDSMOBILE–GMC, INC. IN FAVOR OF THE APPELLANT ENTERED IN THE AMOUNT OF $8,200 WITH INTEREST AT 10% PER ANNUM FROM FEBRUARY 1, 1982.

---

**5.** We note that section b. of Rule G46 implied that the sheriff's levy in this case was proper since it stated, in pertinent part, that: "The plaintiff shall make *reasonable efforts to ascertain the person having custody or possession* of such property and to notify such person that the property has been seized under the attachment on original process." (Emphasis added). Thus, the rule contemplated the situation where the custodian cannot be found at the time of the levy.

JUDGMENT IN FAVOR OF JAMES V. ALUISI, AFFIRMED; COSTS TO BE PAID BY APPELLEE, POHANKA OLDSMOBILE–GMC, INC.