[No. C004432. Third Dist. Mar. 21, 1990.]

SUBURBAN MOTORS, INC., Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Cross-complainant and Appellant; CALIFORNIA AUTO DEALER EXCHANGE et al., Cross-defendants and Respondents.

## COUNSEL

William O. Morris, Richard W. Sherwood, J. Martin McAllister and McDonald, Saeltzer, Morris, Creeggan & Waddock for Defendant, Cross-complainant and Appellant.

John A. Britton and Brian DeAmicis for Plaintiff and Respondent.

Charles M. Farano, Kimberly Briggs Berry and Farano & Kieviet for Cross-defendants and Respondents.

## OPINION

**PUGLIA. P. J.**—Defendant State Farm Mutual Automobile Insurance Company (State Farm) appeals from a summary judgment declaring plaintiff, Suburban Motors, Inc., has valid title to an automobile. State Farm contends its title, obtained directly from the lawful owner whom it insured and from whom the vehicle was stolen, is superior to the claim of Suburban Motors, a bona fide purchaser for value under a "chain of title" traceable to the thief. We agree and shall reverse the judgment.

The summary judgment motion was submitted to the trial court on stipulated facts. Richard Kirschner was the lawful owner of a 1981 Mercedes Benz bearing vehicle identification number WDBBA45A6BB006051. Kirschner was the named insured under State Farm's policy insuring the vehicle against theft. Sometime prior to November 27, 1985, the Mercedes was stolen by a thief or thieves unknown. State Farm paid Kirschner the approximate sum of $41,000 under its policy of insurance for the loss of the Mercedes in consideration for which Kirschner transferred title to State Farm.

On or about November 27, 1985, Steven Taglianetti, a licensed wholesale automobile dealer, presented the stolen Mercedes to an auction operated by California Auto Dealers Exchange (CADE). Taglianetti knew or should have known the Mercedes was stolen. CADE had no knowledge the vehicle was stolen. The original vehicle identification number (VIN) on the Mercedes had been changed to WDBBA45A5BB007904. Sometime before November 27, 1985, the California Department of Motor Vehicles (DMV) had issued documents of title for the Mercedes under the altered VIN based upon a certificate of title from Louisiana.[1] Suburban Motors eventually acquired the Mercedes after it had passed from CADE through a succession of "owners" who, like Suburban Motors, had purchased the vehicle without knowledge it had been stolen.

Suburban Motors leased the Mercedes to an individual named Sergeant. On or about April 4, 1986, the California Highway Patrol (CHP) discovered the Mercedes was a stolen automobile. Sergeant voluntarily relinquished possession of the vehicle to the CHP who subsequently turned it over to State Farm.

Thereafter Suburban Motors filed a "complaint for possession of personal property or its value, for declaratory relief, and for damages," naming several defendants including State Farm. Cross-complaints were filed bringing into the action CADE and CADE's surety, Aetna Life and Casualty Company (Aetna).

CADE and Aetna moved for summary judgment, requesting the trial court declare and adjudge that Suburban Motors "has the right to possession, title and control" of the Mercedes. State Farm countered with its own motion for a summary judgment declaring it has valid title to and the right to possession of the Mercedes. The trial court granted the motion of CADE and Aetna and denied State Farm's motion. Judgment was entered declaring that Suburban Motors has the right to possession, title and control of the Mercedes and ordering State Farm to transfer possession and control to Suburban Motors. This appeal followed.

---

[1] Presumably DMV received notice of the theft. (See Veh. Code, §§ 10500, 10503). On receiving notice, DMV is required to "place an appropriate notice in the electronic file system which will identify such vehicles during the processing of new certificates of registration, ownership, or registration and ownership." (Veh. Code, § 10504.) This safeguard operates to prevent creation of a second chain of title for a stolen vehicle under its authentic VIN. Obviously, it is not proof against registration of a stolen vehicle under the VIN assigned to a similar car not registered in California. Although the stipulated facts do not explain the orgin of the spurious VIN used here, one can speculate that it came from a heavily damaged Mercedes registered in Louisiana, probably acquired from a wrecking yard by the thief or an accomplice at the cost of its salvage value and then falsely presented to the Louisiana vehicle registration authority as "rebuilt."

State Farm contends its title should prevail over the claim of Suburban Motors who, although a bona fide purchaser for value, claims under a title "laundered" through another state by the thief or a successor to the thief; that title, State Farm asserts, is not merely voidable, but void notwithstanding that the documents of title issued by DMV appear facially valid.

In support of its claim of title, Suburban Motors advances two arguments: First, the California Uniform Commercial Code has altered the common law rule that good title cannot pass from a thief; second, California is a "full title" state in respect to vehicles and therefore its reliance on apparently valid title documents cannot be defeated.

Since the facts are undisputed, the issue is one of law and the "appellate court is free to draw its own conclusions of law from the undisputed facts." (*Cox Cable San Diego, Inc.* v. *City of San Diego* (1987) 188 Cal.App.3d 952, 958 [233 Cal.Rptr. 735]; Code Civ. Proc., § 437c.) We shall conclude that State Farm's title is superior to the claim of Suburban Motors and shall reverse the judgment and order entry of judgment in favor of State Farm.

I

Section 2403 of the California Uniform Commercial Code (section 2403) states in relevant part: "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though: [¶] (a) The transferor was deceived as to the identity of the purchaser, or [¶] (b) The delivery was in exchange for a check which is later dishonored, or [¶] (c) It was agreed that the transaction was to be a 'cash sale,' or [¶] (d) The delivery was procured through fraud punishable as larcenous under the criminal law."

Section 2403 applies to the sale of automobiles. (*English* v. *Ralph Williams Ford* (1971) 17 Cal.App.3d 1038, 1047-1048 [95 Cal.Rptr. 501].)

Although section 2403 may enlarge the circumstances in which, at common law, a good faith purchaser for value can take good title, there is no authority for Suburban Motors's contention that section 2403 validates a second chain of title to an automobile spuriously created after it has been stolen. Indeed, the language of section 2403 itself, the decisions in jurisdictions construing cognate statutes, and authoritative comment on the

Uniform Commercial Code belie the notion that by a process of "laundering" a thief or his successors can generate a second chain of valid title to a stolen vehicle no matter how facially credible the product of these efforts.

Section 2403 does not in terms restrict the creation of voidable title to the four circumstances expressly identified. However, each of the four listed circumstances involves the "voluntary" transfer of goods and title, not the "involuntary" transfer as by larceny. Moreover, the statute limits the power to pass good title to one who has obtained the goods through delivery as part of a "transaction of purchase." (§ 2403, subd. (1).) ■ ■ ■ ■ ■ Although there may be no moral distinction between larceny and theft by false pretenses (see § 2403, subd. (1)(d)), the larcenist here obviously did not obtain the vehicle through a "transaction of purchase" and therefore acquired no title which could be transferred to his successors in the chain of possession.[2]

The consequences of the creation of a whole new title to a vehicle through "laundering" are not specifically addressed in the California Uniform Commercial Code. Nor have California appellate courts dealt with the issue. However, appellate courts of other states, applying provisions of the Uniform Commercial Code of like effect to section 2403, have rejected the notion that title to a stolen vehicle, good as against that of the owner or his successor in interest, can be created by the process of "laundering" as employed here.[3] For example, in *Inmi-Etti* v. *Aluisi* (1985) 63 Md.App. 293 [492 A.2d 917] a person who purchased an automobile from a thief bearing apparently valid title documents claimed to have passed title good as against the owner. The court rejected the claim under section 2403 of the Uniform Commercial Code because "voidable title under the Code can only arise from a voluntary transfer or delivery of the goods by the owner. If the

---

[2] Under section 2403, subdivision (1)(d), a purchaser has power to transfer good title to a good faith purchaser for value even though he has procured delivery of the goods "through fraud punishable as larcenous under the criminal law" *if* the goods were delivered "under a transaction of purchase." In larceny by trick and device the victim is defrauded only of possession of the property but does not intend to part with title. If the victim is defrauded of both possession and title, the crime is theft by false pretense. (2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 623, pp. 702-703.) While we need not decide the question, it is arguable that a larceny by trick and device does not comprehend a "transaction of purchase."

[3] State Farm cites *Beverly Finance Co.* v. *American Casualty Co.* (1969) 273 Cal.App.2d 259 [78 Cal.Rptr. 334] which held the title of the original owner's successor superior to that of a good faith purchaser of a stolen vehicle with a laundered out-of-state title. That case, however, is inapposite because it was decided under the law applicable prior to January 1, 1965, the effective date of the California Uniform Commercial Code. Similarly, *Hardware Mutual Casualty Co.* v. *Gall* (1968) 15 Ohio St.2d 261 [240 N.E.2d 502] and *Home Ins. Co., etc.* v. *Small* (Fla.App. 1980) 389 So.2d 1255 were not decided under the provisions of the Uniform Commercial Code and thus are of no relevance here.

goods are stolen or otherwise obtained against the will of the owner, only void title can result." (492 A.2d at p. 923.) On similar facts, *Allstate Ins. Co. v. Estes* (Miss. 1977) 345 So.2d 265 upheld the title of the successor to the owner of a stolen automobile as against the claim of a good faith purchaser for value relying on facially valid title documents. Applying Mississippi's version of section 2403 of the Uniform Commercial Code, the court stated: "Regardless of the number of transactions, one cannot remove himself from the confines of the rule: A purchaser can take only those rights which his transferor has in the subject goods; a thief has neither title nor the power to convey such." (*Id.* at p. 266, fn. omitted.)

■ A respected commentator states: "The possessor of stolen goods does not have voidable title and therefore cannot convey good title under [Uniform Commercial Code section 2403] regardless of how innocently the goods had been acquired by him." (3 Anderson, Uniform Commercial Code (3d ed. 1983) § 2-403:26, at p. 584, fn. omitted. Thus, "a sale by the thief or any other person claiming under the thief does not vest any title in the purchaser as against the owner, though the sale was made in the ordinary course of trade and the purchaser acted in good faith." (*Id.* § 2-401:61, at p. 555, fn. omitted.) Any title derived from a thief, despite an authentic certificate of title, is therefore considered void, not "voidable" as the term is used in section 2403. Other commentators concur. (See, e.g., 1 White & Summers, Uniform Commercial Code (3d ed. 1988) § 3-11.)

■ Applying the foregoing principles to the instant facts, it is apparent Taglianetti's title to the Mercedes was void, not merely voidable. Thus on November 27, 1985, CADE, Suburban Motors's predecessor, did not acquire valid title although a good faith purchaser for value.

## II

Suburban Motors contends that because California is a "full title" state as to motor vehicle registrations, its claim under "clean" title documents duly issued by DMV cannot be defeated even by the owner or his successor.

■ The full title doctrine pertains to the perfection of security interests in motor vehicles. As explained in *T & O Mobile Homes, Inc. v. United California Bank* (1985) 40 Cal.3d 441 [220 Cal.Rptr. 627, 709 P.2d 430], ". . . the special scheme employed for the registration of security interests in motor vehicles relies primarily on *actual* notice to subsequent purchasers through a certificate of ownership held by the seller. (See *Security Interests in Motor Vehicles, [Under the UCC: A New Chassis for Certificate of Title Legislation* (1961) 70 Yale L.J. 995, 1005]; Comment, *The California Used*

*Car Dealer and the Foreign Lien—A Study in the Conflict of Laws* (1959) 47 Cal.L.Rev. 543, 546-547.) Because this 'full title' system requires all security interests to be listed on the statutory certificate of ownership (see Veh. Code, §§ 370, 4451, 4453), a purchaser may rely on the certificate and is not expected to check a centralized set of records to determine whether a security interest has been recorded. [¶] California adopted the full title system decades before the advent of the UCC, and the system remains essentially unchanged. The buyer's right to rely on the information on the certificate of ownership has been emphasized by our courts both before and after the enactment of the UCC. In *First National Bank of Hays City* v. *Sprigg* (1962) 209 Cal.App.2d 258 [25 Cal.Rptr. 838], decided one year before the enactment of the UCC, the court observed that 'California is known as a "full title" state insofar as registration of motor vehicles is concerned. This means that anyone transacting business with the owner of a motor vehicle can rely upon the title as reflected by the registration certificate, without further inquiry.' (*Id.*, at pp. 259-260.) [¶] *Ferraro* v. *Pacific Finance Corp.* (1970) 8 Cal.App.3d 339 [87 Cal.Rptr. 226], decided seven years after adoption of the UCC, reached the same conclusion. 'In California, as is well known to anyone engaged in th e business of selling or lending money on the security of automobiles, a prospective purchaser of a motor vehicle without knowledge of any defect of title may rely exclusively on the information disclosed by the statutory certificate of ownership.' (*Id.*, at p. 346, fn. 1.)" (Fn. omitted, italics original, 40 Cal.3d at pp. 448-449.)

California's full title statute is found in division 3, chapter 3 of the Vehicle Code (§§ 6300-6303). Vehicle Code section 6301 provides: "When the secured party, his or her successor, or his or her assignee, has deposited with the department a properly endorsed certificate of ownership showing the secured party as legal owner or an application in usual form for an original registration, together with an application for registration of the secured party as legal owner, the deposit constitutes perfection of the security interest and the rights of all persons in the vehicle shall be subject to the provisions of the Uniform Commercial Code . . . ." And Vehicle Code section 6303 provides: "Except as provided in Sections 5905, 5907 and 5908, the method provided in this chapter for perfecting a security interest on a vehicle registered under this code is exclusive, but the effect of such perfection, and the creation, attachment, priority and validity of such security interest shall be governed by the Uniform Commercial Code."

The full title doctrine operates to defeat the claims of holders of an unlisted security interest as against the claims of good faith purchasers (see e.g., *Louis & Diederich, Inc.* v. *Cambridge European Imports Inc.* (1987) 189 Cal.App.3d 1574, 1587 [234 Cal.Rptr. 889].) Under the full title statute,

"it should normally be impossible for a seller to present a buyer with a certificate of ownership which shows no security interest at a time when the DMV records show one." (*T. & O. Mobile, supra*, 40 Cal.3d at p. 450.) ■ However, the full title doctrine is of no assistance to one in the position of Suburban Motors. State Farm does not claim a security interest in the vehicle. ■ ■ ■ ■ ■ It claims outright, unencumbered ownership under the title of the owner as against a holder under a second chain of title created by the thief.[4]

In these circumstances it would be impossible for one in the position of State Farm to protect its interest under the full title doctrine. "Responsibility for insuring the security interest is actually recorded and listed on the certificate of ownership is properly placed on the lender as the party seeking the protection offered by recordation." (*T & O Mobile Homes, supra*, 40 Cal.3d at p. 452.) Apart from the fact that State Farm was not a lender as contemplated by the full title doctrine, it could not protect its valid, unencumbered interest by giving notice to good faith purchasers who, unbeknown to State Farm, take under a spurious chain of title dependent on "laundered" title documents.

We recognize that neither Suburban Motors nor State Farm shares any legal or moral blame for the illegal conduct which created this impasse. We agree with Suburban Motors that many automobile owners have insurance and therefore can shift the risk of theft to an insurer who accepts premium payments in contemplation of precisely that contingency. Yet, not all

---

[4] At the relevant time, section 5600 of the Vehicle Code provided: "No transfer of the title or any interest in or to a vehicle registered under this code shall pass, and any attempted transfer shall not be effective, until the parties thereto have fulfilled either of the following requirements: [¶] (a) The transferor has made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed the certificate and card in the United States mail addressed to the department when and as required under this code with the proper transfer fee, together with the amount required to be paid under Part 1 (commencing with Section 6001), Division 2 of the Revenue and Taxation Code with respect to the use by the transferee of the vehicle, and thereby makes application for a transfer of registration except as otherwise provided in Sections 5905, 5906, 5907, and 5908. [¶] (b) The transferor has delivered to the department or has placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of the vehicle pursuant to the sale or transfer except as provided in Section 5602." (Stats. 1965, 1st Ex. Sess., ch. 2, p. 5454, § 40, eff. July 12, 1965, operative Aug. 1, 1965.) Although the requirements of Vehicle Code section 5600 were met as between Suburban Motors and its transferor, the resulting "clean" DMV title documents are only prima facie evidence of ownership. (*Louis Diederich, Inc.* v. *Cambridge European Imports, Inc., supra*, 189 Cal.App.3d at p. 1589.) They do not conclusively establish Suburban Motors's conflicting claim of outright ownership or, a fortiori, foreclose State Farm's challenge to their validity. (See *Davis* v. *Joseph* (1957) 148 Cal.App.2d 899, 905 [307 P.2d 958].)

vehicle owners have or can afford theft insurance. And if insurers are unable to recoup their costs through recovery of stolen vehicles, it will inevitably drive the rates still higher and increase the numbers who cannot afford insurance.

But we do not rest our decision on these policy considerations which have, in any event, been resolved by the Legislature adversely to Suburban Motors's position. Under section 2403, Suburban Motors's claim to the vehicle is clearly subordinate to that of State Farm and the full title doctrine, applying as it does to security interests, does not alter that result.

The judgment is reversed, and the trial court is directed to enter judgment in favor of State Farm. State Farm is to recover its costs.

Sparks, J., and Scotland, J., concurred.