248 N.J. Super. 426 (1991)
591 A.2d 661
TOUCH OF CLASS LEASING, RAY CATENA MOTOR CAR CORP. AND GRAN PRIX AUTO WHOLESALERS, INC., PLAINTIFFS-APPELLANTS,
v.
MERCEDES-BENZ CREDIT OF CANADA, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1991.
Decided May 29, 1991.
*429 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
Thomas J. Benedetti argued the cause for appellants (Boyar, Higgins & Hayden, attorneys; Thomas J. Benedetti, of counsel and on the brief).
Michael D. Sirota argued the cause for respondent (Cole, Schotz, Bernstein, Meisel & Forman, attorneys; Gregory R. Haworth, of counsel; Michael D. Sirota and Leo V. Leyva, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Touch of Class Leasing (Touch of Class), Ray Catena Motor Car Corp. (Ray Catena) and Gran Prix Auto Wholesalers, Inc. (Gran Prix) appeal from a judgment of the Law Division that declared title to and ownership of a 1987 Mercedes-Benz 560 SEL (560 SEL) vested in defendant Mercedes-Benz Credit of Canada, Inc. (Mercedes-Benz).
On December 6, 1986, Mercedes-Benz entered into a lease with Robert Barnabe (Barnabe), of Quebec, Canada. When Barnabe presented his credit application to Mercedes-Benz, he represented that he personally owned a home with considerable equity and was the president of several companies, including Rallye Motors Ltd. (Rallye Motors), of Quebec, Canada. Barnabe entered into the lease in his individual capacity for a five year term with monthly payments of $1,717.02 plus local sales tax. In accordance with the lease, Barnabe maintained and paid for liability insurance on the 560 SEL. On February 12, 1987, Mercedes-Benz received confirmation of insurance from R.J. Laws Insurance Ltd., indicating the named insured to be "Robert P. Barnabe, 129 Clemente Street, LaSalle, P.Q. H3A *430 1B5." On December 9, 1986, Barnabe paid his first lease payment with a personal check drawn on his personal account. Until approximately January 1989, Barnabe made timely lease payments to Mercedes-Benz. Thereafter, Barnabe's lease payments were often late. In approximately September 1989, Barnabe ceased making lease payments to Mercedes-Benz.
Mercedes-Benz agreed to enter into the lease on the condition that Barnabe operate the 560 SEL only in his personal capacity. The lease dealt specifically with the issue of title to and ownership of the 560 SEL. The lease provided that Mercedes-Benz retained title to and ownership of the 560 SEL. The lease stated that Barnabe had no right, title or interest in and to the 560 SEL, except for the right to operate the 560 SEL. The lease also required Barnabe to acknowledge that he was not an agent of Mercedes-Benz and was responsible for the registration of the 560 SEL in Mercedes-Benz's name. Barnabe agreed to use the 560 SEL only for lawful purposes during the term of the lease. Barnabe also agreed not to assign, transfer or sublet any of his rights or otherwise encumber the 560 SEL and not to make any changes to the 560 SEL which would decrease its economic value or functional utility. Finally, the lease provided that its terms would be governed by and interpreted in accordance with the laws of Quebec and that Barnabe was a consumer as defined in the Consumer Protection Act of Quebec.
Contrary to the specific terms of the lease agreement, Barnabe unlawfully obtained a Canadian Certificate of Registration in the name of Rallye Motors, an unregistered Canadian Honda dealership. On December 16, 1986, one week after unlawfully registering the leased 560 SEL, Barnabe, through Rallye Motors, entered into a contract of sale (contract) and sold the leased 560 SEL to Gran Prix for $51,500.
Gran Prix, a New York corporation with its principal place of business at 1531 Jerome Avenue, Bronx, New York, is duly licensed by the City and State of New York as an automobile *431 wholesale and retail dealer. Since its incorporation in 1974, Gran Prix purchased and sold over 78,000 vehicles. A former automobile dealer on Jerome Avenue introduced Edward B. Haskell (Haskell), president of Gran Prix, to Barnabe. Haskell's testimony indicates that Gran Prix's purchase of the 560 SEL from Barnabe was Gran Prix's first transaction with Barnabe, and one of the few times that Gran Prix purchased a car from Canada, a non-title jurisdiction. Although Haskell testified that he purchased approximately six cars from Canada prior to his transaction with Barnabe, he stated that he was unfamiliar with the documentation necessary to obtain registration or title for a vehicle from Canada.
Prior to Haskell's first meeting with Barnabe, Barnabe contacted Gran Prix to inform it that he had a 1987 560 SEL for sale. Barnabe represented to Haskell that he was a Honda dealer. Haskell telephoned Honda of North America (Honda) to inquire whether Rallye Motors was an authorized Honda dealership and Honda informed Haskell that it was. Haskell noted that Gran Prix regularly relied on the manufacturer's word as to the authorized status of a dealership since a dealer submits monthly financial statements to the manufacturer and the manufacturer frequently audits the dealer. However, Haskell admitted that contacting a manufacturer does not disclose whether the dealer's license is revoked.
According to Haskell, Gran Prix agreed to purchase the 560 SEL from Rallye Motors, and Barnabe personally drove the 560 SEL from Quebec to New York for delivery. After the trip, the 560 SEL's odometer registered 900 kilometers (approximately 560 miles). Upon delivery, Barnabe tendered a title document and the original warranty book to Gran Prix. Gran Prix asked the New Jersey and New York Divisions of Motor Vehicles whether the title document was sufficient to obtain title in New Jersey and New York, and both states indicated that it was sufficient provided that Gran Prix also submitted certain custom forms showing proof of payment of applicable duty tax.
*432 The contract indicates that Barnabe sold the 560 SEL as a "demo" (demonstration) model. Haskell purchased the 560 SEL for Gran Prix without reading the entire contract, without inquiring about the vehicle's low mileage and without inquiring how a Canadian Honda dealer could sell a 560 SEL demo. Haskell contended that the 560 SEL's designation as a demo, rather than a used vehicle, did not raise his suspicions. Haskell also noted that "it was not unusual for this automobile to have only 900 kilometers appearing on its speedometer [sic] since it is common for a dealer to buy or lease a vehicle and have that vehicle sit on its premises pending a subsequent sale."
After purchasing the 560 SEL, Gran Prix sold it to Ray Catena for $53,650. Gran Prix transferred the 560 SEL to Ray Catena with a copy of the title document received from Barnabe, the customs forms and a New York State Motor Vehicle Transfer form. Using these documents, Ray Catena obtained a Title Certificate from the New Jersey Division of Motor Vehicles. Thereafter, Ray Catena transferred the 560 SEL to its wholly owned subsidiary and leasing agent, Touch of Class. Touch of Class leased the 560 SEL to Dr. Ralph Del Priore of Alpine, New Jersey. On March 23, 1990, the New Jersey State Police impounded the 560 SEL while it was in Dr. Del Priore's possession.[1]
Plaintiffs instituted this action against Mercedes-Benz by way of a complaint and an order to show cause, claiming that title to the 560 SEL resided in Touch of Class. Mercedes-Benz moved for a judgment, declaring that title to and ownership of the 560 SEL vested in it and requiring the New Jersey State Police to deliver the 560 SEL to its authorized agent or representative.
*433 After argument, Judge Dwyer in the Law Division held that: (1) Barnabe is not a merchant; (2) Mercedes-Benz did not entrust the 560 SEL to Barnabe, and therefore, the provisions of N.J.S.A. 12A:2-403(2) are inapplicable, and (3) Gran Prix, as well as any successor purchaser, obtained only void title to the stolen 560 SEL. Alternatively, the trial court found that even if the doctrine of entrustment applied, Gran Prix was not a buyer in the ordinary course of business because it failed to observe reasonable commercial standards of an experienced merchant trading in the industry. The trial court also held that Haskell's testimony revealed Gran Prix's lack of honesty and good faith in this transaction and entered judgment vesting title to the 560 SEL in Mercedes-Benz.
Plaintiffs appealed, seeking a judgment declaring that title to the 560 SEL vested in them. Plaintiffs contend that the trial court ignored controlling provisions of the Uniform Commercial Code (UCC) in finding that Barnabe is not a merchant and placed a burden upon Gran Prix which ran counter to established legal principles by finding that Gran Prix should have further investigated the transaction with Barnabe. We disagree and affirm.
We are satisfied from our study of the record and the arguments presented that sufficient credible evidence in the record as a whole warrants the findings and conclusions of the trial court, and we discern no good reason or justification for disturbing them. Leimgruber v. Claridge Assocs. Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). See also R. 2:11-3(e)(1)(A). Moreover, all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, we affirm the judgment under review substantially for the reasons expressed by Judge Dwyer in his thorough and thoughtful oral opinion of June 22, 1990. However, we deem it appropriate to comment further with respect to some of the contentions raised by plaintiffs.

*434 I.
We are convinced that the trial court properly found that the Mercedes-Benz/Barnabe lease is a true lease, not a lease intended for security. The drafters of Article 9 of the UCC expressly provided in N.J.S.A. 12A:9-102(1)(a) that the scope of Article 9 includes all transactions, regardless of their form, that "are intended to create a security interest in personal property or fixtures...." To this end, N.J.S.A. 12A:9-102(2) provides that Article 9 "applies to security interests created by contract including ... lease[s] ... intended as security." The drafters specifically referred to leases intended as security to clarify that Article 9 applies to transactions that, while disguised as leases, are in effect sales or conditional sales from the lessor to the lessee.
N.J.S.A. 12A:1-201(37) defines "security interest" as:

an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (12A:2-401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts or chattel paper which is subject to chapter 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under 12A:2-401 is not a "security interest," but a buyer may also acquire a "security interest" by complying with chapter 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (12A:2-326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. [emphasis added].
There is a conflict among the jurisdictions that interpreted these provisions of the UCC, and there is little on the topic from the New Jersey courts. BJL Leasing Corp. v. Whittington, Singer, Davis & Co., 204 N.J. Super. 314, 498 A.2d 1262 (App. Div. 1985) discusses the issue. There, defendant corporation originally owned a 1969 Mercedes-Benz 280 SE convertible, and *435 whether for tax advantages, to obtain ready cash or for some other purpose, defendant entered into a sale-leaseback with plaintiff. The agreement provided for 48 equal monthly payments of $291 for the lease of the 280 SE and granted the lessee an option to repurchase the vehicle from the lessor at the end of the lease for $1. Plaintiff argued that the transaction was a true lease, not a loan secured by the car. We noted that although N.J.S.A. 12A:1-201(37) focuses upon the intention of the parties in determining whether a lease is in fact a secured transaction, it establishes certain standards. As a matter of law, we found that the language of N.J.S.A. 12A:1-201(37), "nominal consideration does make the lease one intended for security," established the lease as a security agreement. Thus, the arrangement between the parties was a secured transaction, not a true lease.
Here, however, the Mercedes-Benz/Barnabe lease is a true lease, not a lease intended as security. The following factors support the trial court's conclusion: (1) there is no evidence indicating that Barnabe had an option to purchase the 560 SEL for a nominal sum or would become the owner of the 560 SEL for no additional consideration at the end of the lease; (2) there is no evidence that Barnabe would acquire any equity in the 560 SEL over the term of the lease, and (3) there is no evidence as to the useful life of the 560 SEL, and thus, no evidence to support an inference that Mercedes-Benz would abandon the 560 SEL at the end of the lease. By contrast, substantial evidence supports the finding of a true lease. Foremost is the express manifestation of the parties' intent in the lease itself: "I [Barnabe] understand that I [Barnabe] have no option to purchase the vehicle at any time.... I [Barnabe] understand and agree that you [Mercedes-Benz] shall retain title to and ownership of the vehicle and that I [Barnabe] shall have no right, title or interest in and to the vehicle, except for the right to operate the vehicle...." Finally, despite affidavits from witnesses for Mercedes-Benz asserting that the parties intended *436 a true lease, no one stated that the parties intended the contrary.
The practical effect of the Mercedes-Benz/Barnabe lease is that Barnabe was to acquire use of the 560 SEL during the term of the lease, and Mercedes-Benz was to receive the 560 SEL back at the end of the lease. Consequently, the trial court correctly held that the lease is a true lease and that Barnabe merely possessed the interest of a lessee. Thus, Mercedes-Benz's interest in the 560 SEL at the time of the sale from Barnabe to Gran Prix was that of an owner rather than a secured party, and as such, "none of the provisions of the Article is applicable to the lease as an interest in chattel." Official Comment 2, UCC § 9-409 (1972 Official Comment). Therefore, it was unnecessary for Mercedes-Benz to perfect its interest derived from the lease, since by its terms, there was no intention to create a security interest.

II.
We are also satisfied that Barnabe is not a merchant to whom Mercedes-Benz entrusted the 560 SEL within the scope or intent of N.J.S.A. 12A:2-403. N.J.S.A. 12A:2-403 provides:
(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
(a) the transferor was deceived as to the identity of the purchaser, or
(b) the delivery was in exchange for a check which is later dishonored, or
(c) it was agreed that the transaction was to be a "cash sale", or
(d) the delivery was procured through fraud punishable as larcenous under the criminal law.
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the *437 entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
(4) The rights of other purchasers of goods and of lien creditors are governed by the Chapters on Secured Transactions (Chapter 9), Bulk Transfers (Chapter 6) and Documents of Title (Chapter 7).

A.

The General Power of a Transferor or the Actual or Apparent Agent of a Transferor to Transfer Title to Goods.
The first phrase of N.J.S.A. 12A:2-403(1) provides that "[a] purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." Because Mercedes-Benz neither conferred actual or apparent authority upon Barnabe prior to the sale of the 560 SEL to Gran Prix nor ratified Barnabe's authority by its knowing acquiescence after the sale, Mercedes-Benz retained good title to the 560 SEL and Gran Prix acquired no rights in the 560 SEL through the sale, at least insofar as those rights would derive through the first phrase in N.J.S.A. 12A:2-403(1).

B.

Gran Prix's Title as a Good Faith Purchaser of Goods For Value.
Immediately after the first phrase of N.J.S.A. 12A:2-403(1), the statute provides, in pertinent part:
A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:
........
(d) The delivery was procured through fraud punishable as larcenous under the criminal law.
This is the good faith purchaser rule of the UCC. Essentially, it provides that the sale to a good faith purchaser for value cures the defects in the seller's voidable title. However, it cannot cure void title. Mercedes-Benz correctly argues that *438 Barnabe's theft of the 560 SEL vested him with only void title and therefore, prevented any subsequent purchaser from obtaining lawful title to the 560 SEL.
For the seller to acquire even voidable title, he must obtain delivery of the goods through "a transaction of purchase." This phrase is generally limited to those situations in which a third party delivers goods to a subsequent seller, intending for the subsequent seller to become the owner of the goods. N.J.S.A. 12A:2-403(1) cures the defects in a subsequent seller's voidable title through the sale to a good faith purchaser for value and gives the good faith purchaser clear title, free from any claims of third parties. However, if a party merely converts the goods to his own use after obtaining possession through some manner other than a transaction of purchase, he does not possess even voidable title. Rather, he possesses void title and therefore, cannot pass good title even to a good faith purchaser for value. See, e.g., Marvin v. Connelly, 272 S.C. 425, 252 S.E.2d 562 (1979); Allstate Ins. Co. v. Estes, 345 So.2d 265 (Miss. 1977). See generally J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 3.11, at 140-42 (2d ed. 1980).
Even assuming Gran Prix is a good faith purchaser for value, it cannot benefit from this portion of N.J.S.A. 12A:2-403(1). No evidence shows that Barnabe obtained possession of the 560 SEL by a "transaction of purchase" with Mercedes-Benz. Consequently, Barnabe did not even possess voidable title at the time of the sale to Gran Prix, and N.J.S.A. 12A:2-403(1) cannot cure the defects in any title that Gran Prix obtained from Barnabe. It is well-settled that if goods are stolen "the thief acquire[s] no title and [cannot] transfer good title to others regardless of their good faith and ignorance of the theft." O'Keeffe v. Snyder, 83 N.J. 478, 488, 416 A.2d 862 (1980). See Ashton v. Allen, 70 N.J.L. 117, 119, 56 A. 165 (Sup.Ct. 1903); Joseph v. Lesnevich, 56 N.J. Super. 340, 346, 153 A.2d 349 (App.Div. 1959); Kutner Buick, Inc. v. Strelecki, 111 N.J. Super. 89, 97, 267 A.2d 549 (Ch.Div. 1970); National Retailers *439 Mut. Ins. Co. v. Gambino, 1 N.J. Super. 627, 629, 64 A.2d 927 (Law Div. 1948). Furthermore, the record reveals that Barnabe merely leased the 560 SEL and therefore, did not obtain even voidable title. A true lease is not a transaction of purchase and does not confer even voidable title upon the lessee. See, e.g., McDonald's Chevrolet, Inc. v. Johnson, 176 Ind. App. 399, 376 N.E.2d 106 (1978) (lessee possessed void title; thus, when lessee sold motor home to dealer, subsequent good faith purchaser for value acquired no title).

C.

Gran Prix's Title as a Buyer In Ordinary Course from a Merchant to Whom Goods Were Entrusted.
Gran Prix grounds its claim of title to the 560 SEL upon the language of N.J.S.A. 12A:2-403(2) and (3). N.J.S.A. 12A:2-403(2) and (3) provide:
(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
For a buyer to acquire title to goods under these provisions, three elements must be found: (1) an entrustment of goods, (2) to a merchant who deals in goods of the kind, (3) followed by a sale to a buyer in the ordinary course of business. Duesenberg & King, 3A Bender's Uniform Commercial Code Service: Sales and Bulk Transfers, § 10.06[3] (1987). If all three elements are present, the rights of the entruster are transferred to the buyer in the ordinary course of business. Plaintiffs argue that Mercedes-Benz entrusted the 560 SEL to Barnabe, a merchant who dealt in automobiles, and that Barnabe sold the 560 SEL to Gran Prix, a buyer in the ordinary course of business.
*440 The trial court properly found that Barnabe's status is that of an individual and not a merchant dealing in automobiles, and therefore, Barnabe could not transfer good title to Gran Prix. N.J.S.A. 12A:2-104(1) defines "merchant" as:
a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.
Although N.J.S.A. 12A:2-104(1) provides the conditions under which a party acquires merchant status, N.J.S.A. 12A:2-403 applies only to a "merchant who deals in goods" of the kind entrusted, meaning one who is engaged regularly in selling goods of the kind. See Tumber v. Automation Design & Mfg. Corp., 130 N.J. Super. 5, 324 A.2d 602 (Law Div. 1974); Toyomenka, Inc. v. Mount Hope Finishing Co., 432 F.2d 722 (4th Cir.1970). See also 3 Anderson, Uniform Commercial Code § 2-403:31 (3d ed. 1981).
The determination of whether a party to a transaction is a merchant is a factual question. See, e.g., Agrex, Inc. v. Schrant, 221 Neb. 604, 379 N.W.2d 751 (1986); Ferragamo v. Massachusetts Bay Transp. Auth., 395 Mass. 581, 481 N.E.2d 477 (1985); Fred J. Moore, Inc. v. Schinmann, 40 Wash. App. 705, 700 P.2d 754 (1985); Bauer v. Curran, 360 N.W.2d 88 (Iowa 1984); Arigo v. Abbott & Cobb, Inc., 86 A.D.2d 958, 448 N.Y.S.2d 311 (1982).
Moreover, that inquiry `is of necessity highly dependent on the factual setting of the transaction in question. Consequently, whether a person is a merchant is to be determined according to the circumstances of each case.' Ferragamo v. Massachusetts Bay Transp. Auth., 395 Mass. at 584, 481 N.E.2d at 480 (quoting 1 Anderson, Uniform Commercial Code § 2-104:25 (3d ed. 1981)).
Merchant status generally takes three forms. The first form is transactional in nature; the seller is a dealer in the type of goods involved in the questioned transaction. The second form involves the merchant who holds himself out as having some skill or knowledge of the specific transaction and goods involved. The third form revolves around the principal-agent relationship. See Article, Is He or Isn't He a Merchant?  The *441 Farmer, Part I, 82 Com.L.J. 155, 156-57 (May 1977). As we explained above, Mercedes-Benz leased the 560 SEL to Barnabe in his individual capacity, not in his capacity as president of Rallye Motors, which might have qualified him as a merchant.
It is well-settled that a corporation is an entity separate and distinct from its principals. See Department of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983); Lyon v. Barrett, 89 N.J. 294, 445 A.2d 1153 (1982); Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 142 A.2d 861 (1958); In re Greenberg, 21 N.J. 213, 121 A.2d 520 (1956); Baran v. Clouse Trucking, Inc., 225 N.J. Super. 230, 542 A.2d 34 (App.Div.), certif. denied, 113 N.J. 353, 550 A.2d 463 (1988); Department of Labor v. Berlanti, 196 N.J. Super. 122, 481 A.2d 830 (App.Div.), certif. granted, 99 N.J. 151, 491 A.2d 666 (1984), appeal dismissed, 101 N.J. 568, 503 A.2d 846 (1985); Cantor v. Sunshine Greenery, Inc., 165 N.J. Super. 411, 398 A.2d 571 (App.Div. 1979). See also Engineered Builders, Inc. v. Lamar Nash Buick-Pontiac, Inc., 133 Ga. App. 141, 210 S.E.2d 179 (1974); Brega v. CSRA Realty Co., 223 Ga. 724, 157 S.E.2d 738 (1967); M.F.A. Coop. Ass'n of Mansfield v. Murray, 365 S.W.2d 279 (Mo. App. 1963). It is only upon proof of fraud or injustice that a court will pierce the corporate veil to impose liability on the corporate principals. See Department of Envtl. Protection v. Ventron Corp., supra; Lyon v. Barrett, supra; Frank Rizzo, Inc. v. Alatsas, supra; In re Greenberg, supra; Baran v. Clouse Trucking, Inc., supra; Department of Labor v. Berlanti, supra; Cantor v. Sunshine Greenery, Inc., supra. The party seeking an exception to this fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity.
As the foregoing cases demonstrate, a corporation is an entity separate and distinct from its principals, and an individual is separate and distinct from a corporation. Thus, contrary to plaintiffs' contention, the distinction between individuals and their related corporate entities should not be disregarded. Mercedes-Benz contracted with Barnabe in his individual capacity, *442 not in his capacity as president of Rallye Motors. The record discloses that Mercedes-Benz leased the 560 SEL to Barnabe only in his individual capacity and that Barnabe signed the lease only in his individual capacity. Mercedes-Benz requested a personal guarantee from Barnabe, not from Rallye Motors, and made inquiries as to Barnabe's financial status and background, not Rallye Motors' financial status and background. The lease itself clearly indicates that it was the individual undertaking of Barnabe. Furthermore, the certificate of insurance furnished by Barnabe to Mercedes-Benz indicated that the insurance policy was issued on behalf of Barnabe in his individual capacity, not to Barnabe in his capacity as president of Rallye Motors. Consequently, Barnabe, the individual, and Barnabe, the president of Rallye Motors, are entirely separate and distinct entities.
Contrary to plaintiffs' claim, Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 84, 548 A.2d 1161 (App.Div. 1988) is factually distinguishable from this matter and does not compel a contrary conclusion. There, the automobile lessor leased back a BMW to Exotic Car Leasing Corporation (Exotic), not to an individual. Because the lessor leased the BMW to Exotic, which was primarily in the business of buying, selling and leasing automobiles, we held that Exotic was "`a merchant who deals in goods of that kind' as provided by Section 2-403(2)." Here, however, Mercedes-Benz leased the 560 SEL to Barnabe, an individual, not to his corporation, Rallye Motors.
Plaintiffs also argue that the trial court placed an improper burden upon Gran Prix in finding that Gran Prix should have further investigated Barnabe. This argument is meritless.
The entrustment doctrine allows good title to pass to a buyer in the ordinary course of business. N.J.S.A. 12A:1-201(9) defines a "buyer in ordinary course of business" as:
a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at wellhead or minehead shall be deemed to be *443 persons in the business of selling goods of that kind. "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt. [emphasis added].
N.J.S.A. 12A:1-201(9) mandates that the buyer act in good faith.
In the case of a merchant buyer, there is a conflict among the jurisdictions concerning the standard by which to judge a buyer's good faith. Some courts applied the general definition of "good faith" found in N.J.S.A. 12A:1-201(19), which requires "honesty in fact in the conduct or transaction concerned." Other jurisdictions, including New Jersey, hold that when a buyer is a merchant, he must meet the more stringent standards prescribed by N.J.S.A. 12A:2-103(1)(b), which provides that "`good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." A merchant buying from another merchant is a buyer in the ordinary course only if he meets the increased standard of good faith required in the case of a merchant. Tumber v. Automation Design & Mfg. Corp., 130 N.J. Super. at 12, 324 A.2d 602. See Mattek v. Malofsky, 42 Wis.2d 16, 165 N.W.2d 406 (1969). In Tumber, Judge Van Tassel explained the merchant buyer's obligation:
He must be "honest in fact" and must observe reasonable commercial standards of fair dealing in the trade. N.J.S.A. 12A:2-103(1)(b); cf. N.J.S.A. 12A:1-201(19). Additionally, he is charged with the knowledge and skill of merchants. N.J.S.A. 12A:2-104(3). [130 N.J. Super. at 12, 324 A.2d 602].
Applying the N.J.S.A. 12A:2-103(1)(b) definition of good faith here, it is clear that Gran Prix is not a buyer in the ordinary course of business. Gran Prix failed to observe reasonable commercial standards in its dealings with Barnabe. Haskell's testimony indicates that Gran Prix's purchase of the 560 SEL from Barnabe was the first transaction between them and one of Gran Prix's few ventures in buying an automobile from Canada, a non-title jurisdiction. Haskell testified that he was unfamiliar with the documentation necessary to obtain registration or title to an automobile from Canada so he sent an *444 employee to both the New Jersey and New York Divisions of Motor Vehicles to determine if he could obtain registration and title to the 560 SEL with the title document and warranty book tendered by Barnabe. Haskell also testified that he contacted Honda to determine if Barnabe was an authorized Honda dealer. This is the extent of Haskell's investigation, and it falls short of commercially reasonable conduct.
It would have been commercially reasonable for Haskell to inquire how a non-title jurisdiction, such as Canada, assures purchasers of receiving good title.[2] In Canada, Section 22 of the Highway Code governs the sale of automobiles by providing that no one can act as an automobile dealer unless he is duly licensed.[3] The record discloses that Rallye Motors was not licensed as a dealer by the Canadian government. The sale of *445 an automobile is not in the ordinary course of business unless the dealer is licensed. The legal effect of Section 22 is that the true owner of an automobile is entitled to reclaim it from the third party without making any payment to the third party. This rule is necessary in a non-title jurisdiction to protect true owners by influencing persons to buy automobiles only from known licensed dealers. Because of the severe consequences of buying an automobile from an unlicensed dealer in Quebec, the government maintains a telephone service to allow prospective purchasers to verify immediately if they are dealing with a duly licensed dealer. Haskell testified that he never heard of the government's phone service.
Furthermore, despite Haskell's testimony that he would not purchase a car originating from a non-title jurisdiction unless he personally knew the seller, he nevertheless purchased the 560 SEL from Barnabe without asking whether Rallye Motors or Barnabe was a licensed dealer. Haskell also testified that he did not review the sales contract and did not inquire as to the 560 SEL's low mileage. These actions also fall short of commercially reasonable conduct.
*446 Finally, Haskell should have recognized that something was amiss with this transaction when Barnabe personally drove the 560 SEL to New York, and the 560 SEL registered only 900 kilometers on its odometer, with the trip from Canada to New York approximating half of that mileage. Thus, Haskell should have known something was awry with the transaction because Barnabe sold Gran Prix an almost new 560 SEL at a wholesale price. For these reasons, Haskell knew or should have known that the sale of the 560 SEL violated the ownership rights of a third party.
Affirmed.
NOTES
[1] According to Mercedes-Benz, Barnabe is currently in a Canadian jail as a result of his "sale" of numerous other stolen cars similar to the one at issue in this case.
[2] In a title jurisdiction, such as New Jersey, the Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10-1 et seq., assures purchasers of receiving good title by regulating and controlling "title to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent title, within this state." N.J.S.A. 39:10-3.
[3] Section 22 of the Canadian Highway Code provides, in pertinent part:

(1) No person may deal in motor vehicles without having obtained from the Bureau a license to that effect, upon payment to the Bureau of the following fees:
* * * * * * * *
No such license may be issued before the person applying therefor shall have furnished the Bureau with security for the purpose of guaranteeing to the owner of a stolen motor vehicle, sold by such person, the reimbursement of the price which such owner has paid to any buyer of such vehicle, in order to recover the possession by way of revendication as stolen property. In such a case, the owner shall be entitled to claim in his own name, from the dealer and from his surety, the price which he has paid to the buyer.
* * * * * * * *
No sale of a motor vehicle effected by a person who is not licensed under the authority of this subdivision, shall be deemed to have been made by a dealer in motor vehicles.
(2) No person may offer for sale or sell a motor vehicle in a fair or market, or at auction or at a public sale other than that effected according to law, unless such person shall have:
(a) Furnished the Bureau with security for the purpose of guaranteeing to the buyer that he is the owner of such motor vehicle, and also of guaranteeing to the owner of a stolen motor vehicle, sold by such person, the reimbursement of the price which such owner has paid to any buyer of such motor vehicle, in order to recover the possession by way of revendication as stolen property. In such a case, the owner shall be entitled to claim in his own name, from the dealer and from his surety, the price which he has paid to the buyer; and
(b) Obtained from the Bureau a permit for the public sale of such motor vehicle in any of the ways above indicated; and
(c) Deliver such permit to his buyer.
Such security shall be given in the manner indicated in subsection 1 of this section; it shall contain a waiver of the benefit of discussion on the part of the surety, and shall continue for one year from the date of the sale. [emphasis added].