28 F.3d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
AT & T CREDIT CORPORATION, Plaintiff-Appellee,
v.
THOMPSON & HUTSON, formerly known as Thompson, Mann &
Hutson, a South Carolina general partnership,
Defendant-Appellant.
 No. 93-2219.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1994.
Decided July 1, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville. Henry M. Herlong, Jr., District Judge. (CA-92-3595-20)
 James Gordon Carpenter, Thompson & Hutson, Greenville, South Carolina, for Appellant.
 Andrew Jackson White, Jr., Haynsworth, Marion, McKay & Guerard, Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before MICHAEL, Circuit Judge, MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal involves a dispute between the plaintiff-appellee AT & T Credit Corporation ("AT & T Credit") and the defendant-appellant law firm of Thompson & Hutson (1) over whether "leases" of telephone equipment were true leases or security agreements, (2) whether notice of the sale of certain telephone equipment repossessed from Thompson & Hutson by AT & T Credit was a requirement in this case, and (3) whether there was "commercial reasonableness" in such sale. While admitting that it defaulted in its obligations under the contract, Thompson & Hutson also raises a question as to the award of damages as an adjunct to the grant of summary judgment. We affirm.
 
 
 2
 In January, 1991, Thompson & Hutson agreed to finance the acquisition of telephone equipment for its offices in Atlanta, Georgia and Greenville, South Carolina through AT & T Credit. After Thompson & Hutson defaulted in its payment obligations in December 1992, AT & T Credit initiated this action to recover the equipment in the Greenville office and for liquidated damages as established in the contracts themselves.
 
 
 3
 The agreements contained identical liquidated damages provisions. In the event of default Thompson & Hutson would be liable for past due amounts plus the present value of the payments remaining in the 60 month term and for a "Casualty Adjustment" triggered by the fact that Thompson & Hutson would not be returning the repossessed equipment at the end of the fixed term. For a 60 month lease, as in this case, the casualty figure is set by the contract at 30% of the original purchase price, representing the projected value of the equipment at the end of the lease term and, after being discounted to present value, that amount was included in the liquidated damages claimed by AT & T Credit. The lease obligated AT & T Credit to sell the equipment in a "commercially reasonable" manner "with or without notice."
 
 
 4
 Essentially, Thompson & Hutson presents two arguments on appeal. First, it claims that the leases were not "true" leases but were security agreements and that the repossession sale was governed by New Jersey's[1] adaptation of Article 9 of the Uniform Commercial Code. Second, Thompson & Hutson claims that even if the Code does not apply, there were issues of material fact as to the "commercial reasonableness" of the sale to make summary judgment inappropriate.
 
 
 5
 The court reviews the grant of summary judgment de novo, applying the same standard as the district court. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir.1987). A court may render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56(c). To survive a summary judgment motion, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). To prevail on the motion, the moving party need only reveal the absence of any evidence raising a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 6
 Taking the issues in turn, the court first concludes that the lease agreements in this case were indeed "true" leases and not security agreements.[2] The Uniform Commercial Code applies only to agreements "intended for security." Courts have suggested that a lease agreement intended as a security agreement is in effect a conditional sale with the seller retaining title to secure payment of the sales price. Touch of Class Leasing v. Mercedes-Benz Credit Corporation of Canada, Inc., 591 A.2d 661, 665 (N.J.Super.1991).
 
 
 7
 One test for determining whether a lease is a "true lease" or a disguised conditional sale, is to look at the disposition of the property at the end of the term. A conditional sale is indicated if the lessee takes title at the end of the term for no additional consideration, or for only nominal consideration. N.J.S.A. 12A:1-201(37).
 
 
 8
 A difficult situation for decision may be presented where the lease contains an option to purchase for more than nominal consideration at the end of the term. This circuit has looked to the economic motivation of the lessee to exercise the option to purchase. In In re Merritt Dredging, 839 F.2d 203 (4th Cir.1988), we held that a three month charter party was intended as a security agreement where at the end of the three month term the chartering party (lessee) was allowed to purchase the barge by making only nine additional monthly payments. Id. at 209. The three rental payments to be credited as 25% of the total purchase price, "the terms of the charter party created a significant economic compulsion to purchase the barge ... [or lose] substantial 'equity'...." Id. at 209-210; accord Touch of Class Leasing v. Mercedes-Benz Credit Corporation of Canada, Inc., 591 A.2d 661, 665 (N.J.Super.1991). Where the sum of the periodic payments exceeds the original purchase price and the property is expected to have no value at the end of the term, it becomes "fairly obvious" that the lessor thus intended to abandon the property at the end of the term and a conditional sale can be presumed. Leasing Service Corp. v. American Nat'l Bank & Trust Co. 19 U.C.C. Rep. 252, 259-260 (D.N.J.1976) (citations omitted).
 
 
 9
 Here this court concludes, as the District Court did, that the parties intended a "true" lease and not a conditional sale. Thompson & Hutson acquired no equity in the equipment during the course of the term. It had an option to purchase the telephone systems at the end of the lease by paying the fair market value remaining at the end of the term.
 
 
 10
 Other significant aspects of these lease agreements which point to their being "true leases" are the provisions that the lessee acquires no equity in the equipment; in the choice by the lessee of an option to pay fair market value for the equipment at the conclusion of the lease term; that tax benefits inuring to ownership were retained by the owner, AT & T Credit (Sec. 22); that lessee will surrender possession at the end of the lease (Sec. 17); that lessor may assign the lease, a right specifically denied to the lessee (Sec. 23); that lessor would be named as loss payee under proposed insurance policies (Sec. 8); that any additions to the leased equipment would become lessor's property upon attachment (Sec. 10); that the leased property would remain the property of lessor (Sec. 11); and that by the selection of Option A, "... Lessee and Lessor intend the transaction described in the lease to be a true lease ..." (Sec. 24).
 
 
 11
 If the lease had run its full course and lessor then elected not to purchase the equipment, the record before the court indicates that AT & T Credit would sell to secondary market dealers who in turn would sell to end-users, a clear indication that there was considerable additional economic value in the equipment beyond 5 years and that the prospective purchase price would not be nominal. The Casualty Adjustment provision in the lease also indicates that the parties contemplated that the equipment would have value at the end of the term. The defaulting debtor agreed to pay 30% of the original purchase price to reflect the anticipated value of the equipment at the end of a 60 month lease.
 
 
 12
 Offered, but of little or no value, was an affidavit from defendant law firm's managing partner who stated that in his experience, the value of telephone equipment depreciated rapidly. He based this opinion on his experience with other telephone equipment. However, he provided no information as to the type of equipment, its condition, or its age. Such conclusory allegations do not establish a genuine issue of fact.
 
 
 13
 The inquiry does not end here, however, since under both the Commercial Code and the lease, AT & T Credit was obligated to conduct a "commercially reasonable" sale of the repossessed equipment. Where the Commercial Code does not apply, however, as we have determined in this case, the waiver of notice provision contained in the lease was valid and Thompson & Hutson must otherwise establish that the sale was unreasonable.
 
 
 14
 Essentially, Thompson & Hutson argues that it was unreasonable for AT & T Credit not to sell the equipment in a retail market where a higher price might have been obtained. The mere inadequacy of price, however, is not enough; Thompson & Hutson must show that AT & T Credit failed to make a good faith effort to secure the best price under the circumstances. Security Savings Bank v. Tranchitella, supra, at 289. The added costs of a retail sale may have resulted in the net proceeds being less. See id. at 288, n. 2.
 
 
 15
 Used equipment owned by AT & T Credit is sold in the wholesale market using the same method employed here. The fact that AT & T Credit employs the same procedures to dispose of its own equipment is indicative that the process is in good faith and commercially reasonable.
 
 
 16
 Finally, Thompson & Hutson argues that summary judgment was not appropriate because AT & T had failed to update its answers to interrogatories and Thompson & Hutson did not learn of the sale until after the discovery deadline. In light of Thompson & Hutson's failure to press the matter at the district court level or to seek extension of the discovery deadline, we do not entertain the issue on appeal absent exceptional circumstances. United States v. One Mercedes-Benz, 542 F.2d 912, 915 (4th Cir.1976). No such exceptional circumstances exist in this case. The trial court granted extensions of time to the defendant to question the damage issue on two occasions. That a higher price might have been obtained using different sales methods is not relevant where other evidence establishes that AT & T Credit made a good faith effort in disposing of the property.
 
 
 17
 Accordingly, the decision of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The parties agree the substantive law of New Jersey governs under the choice of law provisions in the leases. See infra note
 
 
 [2]
 Summary judgment would not have been appropriate had the leases been intended as security. Under New Jersey law, repossessed security may only be sold after notice to the debtor. N.J.S.A. 12A:9-504(3). Such notice may only be waived after default, id., and the failure to provide it raises a presumption that the sale was unreasonable