Defendant-appellant Martin Equipment Co. of Illinois, dba Tri-State Equipment Co., appeals from a judgment rendered against it in a dispute over ownership of a backhoe. Martin Equipment had leased the backhoe to Dennis Goade, who purported to sell it to plaintiff-appellee Advanced Dirt Works, Inc. Martin Equipment contends that the trial court erred when it found that Martin Equipment had clothed Goade with sufficient indicia of ownership to pass good title to Advanced Dirt Works as a bonafide purchaser for value. We agree. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
Martin Equipment operates several stores in Missouri that sell and rent heavy construction equipment, notably heavy equipment manufactured by John Deere. From May through July, 1995, Martin Equipment leased four John Deere backhoes to Dennis Goade, dba Goade Associates, a construction contractor. One of the backhoes, serial number TO 31ODG785793, was leased to Goade on July 14, 1995 for the intended use of digging septic tank systems in central southern Missouri. Under the terms of the lease, Goade was not permitted to sub-lease or sell the backhoes. Over the next six months, Goade became delinquent in his payments under the lease. Around February 1, 1996, the Federal Bureau of Investigation contacted Martin Equipment and informed it that Goade had sold all four backhoes to buyers located across Missouri state lines. The F.B.I. also informed Martin Equipment that one backhoe, serial number TO 31ODG785793, was in the possession of plaintiff-appellee Advanced Dirt Works, Inc, an Ohio corporation doing business in Champaign County, Ohio. Martin Equipment reported the four backhoes stolen to the local police department and made attempts to contact Advanced Dirt Works to recover the backhoe or receive restitution.
In March of 1995, plaintiff-appellant William C. Midgley and his sons formed an excavating business, Advanced Dirt Works. After leasing a backhoe for several months, they decided to purchase a used backhoe as a cost-saving alternative. Midgley perused a heavy equipment magazine, the Midwest Edition of Track 
Tire, for advertisements. Midgley settled on an advertisement from defendant C.L. Bridges Equipment Co. and contacted the company for information on a 1992 John Deere 310D backhoe, serial number TO 31ODG785793. Using the information, Midgley called Tiger Equipment, a heavy equipment dealer in Columbus, Ohio, for an appraised value of the backhoe. Satisfied with the asking price, Midgley traveled to Michigan to inspect and then to order the backhoe from C.L. Bridges. On August 10, 1995, Midgley purchased the backhoe after C.L. Bridges transported it to Ohio. The bill of sale indicated that ownership was transferred for the purchase price of $39,000. After purchasing the backhoe, Midgley leased it to Advanced Dirt Works.
In February of 1996, Martin Equipment contacted Midgley about returning or paying for the backhoe, but the parties were unable to resolve the matter. On March 12, 1996, Advanced Dirt Works and Midgley filed a complaint naming Martin Equipment and C.L. Bridges as defendants and seeking a declaratory judgment, injunctive relief, rescission, restitution, and damages. Martin Equipment filed its answer, along with counter-claims and cross-claims. C.L. Bridges did not file an answer to the complaint. Advanced Dirt Works and Midgley filed a motion for default judgment against C.L. Bridges. A hearing was held, and the trial court entered default judgment in favor of Advanced Dirt Works and Midgley and against C.L. Bridges. A second hearing was held, and, based on the evidence presented, the trial court entered judgment in favor of Advanced Dirt Works and Midgley and against Martin Equipment. The trial court held that the circumstances surrounding the lease of the backhoe to Goade had clothed him with apparent authority to sell the backhoe to C.L. Bridges, a good faith purchaser, thereby equitably estopping Martin Equipment from asserting ownership.
From the judgment of the trial court, Martin Equipment appeals.
 II
Martin Equipment's sole Assignment of Error is as follows:
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED DECLARATORY JUDGMENT IN FAVOR OF APPELLEES AND AGAINST MARTIN EQUIPMENT AS TO OWNERSHIP OF THE BACKHOE, AND, DENIED MARTIN EQUIPMENT'S CLAIM FOR REPLEVIN OF THE BACKHOE AND/OR DAMAGES AGAINST APPELLEES.
Martin Equipment argues that Midgley does not have any ownership interest in the backhoe because Goade, as a thief, could not convey good title to C.L. Bridges, which, in turn, could not convey good title to Midgley. Martin Equipment maintains that as a lessee, Goade did not have authority to sell or to sub-lease the backhoe, so the unauthorized sale of the backhoe to C.L Bridges conveyed void title. In addition, Martin Equipment argues that R.C. 1302.44 does not protect the conveyance from Goade to C.L. Bridges or the conveyance from C.L. Bridges to Midgley. With respect to the trial court's judgment, Martin Equipment suggests that the Revised Code supersedes the equitable estoppel doctrine, as it exists under the common law, and, therefore, the trial court erred in finding that "slight additional circumstances" beyond mere possession clothed Goade with apparent authority to convey good title to the backhoe.
In response, Midgley argues that the record supports the trial court's findings of "slight additional circumstances" that warranted the application of the common law doctrine of equitable estoppel. Moreover, Midgley contends that the record also supports findings that suggest that Goade transferred an ownership interest. Specifically, Midgley maintains that: the conveyance between Martin Equipment and Goade was not a lease but a conditional sale; that Goade conveyed a leasehold interest to C.L. Bridges rather than full ownership; and that Goade was a merchant dealing in heavy machinery rather than a construction contractor, all of which support the conclusion that Midgley has an ownership interest in the backhoe.
R.C. 1302.44, the codification of Uniform Commercial Code Section 2-403, states, in part, as follows:
 (A) A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase, the purchaser has such power even though:
 (1) the transferor was deceived as to the identity of the purchaser, or
 (2) the delivery was in exchange for a check which is later dishonored, or
 (3) it was agreed that the transaction was to be a "cash sale," or
 (4) the delivery was procured through fraud punishable as larcenous under the criminal law.
 (B) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.
"The purpose of R.C. 1302.44 is [to] protect the innocent bona fide purchaser. As between two innocent parties, the one who is made to bear the loss which results from the wrong of a third party is the one who made possible the wrongful act. R.C. 1302.44
permits a bona fide purchaser to obtain title to goods bought from a merchant to whom the goods have been entrusted, with the loss placed on the entruster who placed the merchant in the apparent position of being able to convey good title." Paxton Nat'l Ins.Co. v. Presley (July 19, 1984), Franklin App. No. 83AP-762, unreported (Slip Opinion).
Generally, "[i]n this country no one can obtain title to stolen property * * * however innocent he may have been in the purchase; public policy forbids the acquisition of title through the thief." Ogden v. Ogden (1854), 4 Ohio St. 182, 195.
In Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.
(App.Div. 1991), 248 N.J.Super. 426, 437-438, 591 A.2d 661,666-667, the New Jersey Superior Court, interpreting N.J.Stat.Ann. 12A:2:2-403, a codification of U.C.C. Section 2-403, found that a lessee of a motor vehicle who, in violation of the terms of his lease, sells the motor vehicle to a car dealership, is vested with only void title, which prevents any subsequent purchaser from obtaining lawful title. The court found that if a party merely converted goods to his own use after obtaining possession in some manner other than a "transaction of purchase" as required by U.C.C. Section 2-403(1), he did not possess even voidable title.Id. at 438. Further, the court concluded that a true lease was not a "transaction of purchase," so the lessee's subsequent sale of the motor vehicle to a car dealership conveyed only void title.Id., citing McDonald's Chevrolet, Inc. v. Johnson (1978),176 Ind. App. 399, 376 N.E.2d 106.
We are persuaded by the rationale of the New Jersey Superior Court and find that neither C.L. Bridges nor Midgley have good title to the backhoe pursuant to R.C. 1302.44(A). Martin Equipment delivered the backhoe to Goade under a true lease, not a "transaction of purchase," so Goade's conversion of the backhoe for his own purposes rendered void title. With respect to R.C.1302.44(B), we are bound by the factual findings of the trial court, and we conclude that Goade, as an excavating contractor, was not a "merchant" as defined by R.C. 1302.01(A)(5), and so Martin Equipment did not give Goade power to transfer its ownership rights when it entrusted the backhoe to him pursuant to the lease. Although C.L. Bridges was a "merchant," it could only convey to Midgley "all rights of the entruster," Goade, which amounted to void title. Accordingly, R.C. 1302.44 favors Martin Equipment as the holder of good title to the backhoe.
For similar reasons, we also conclude that R.C. 1310.33 does not create a valid leasehold interest for either C.L. Bridges or Midgley. Under 1310.33(A), Goade did not deliver the backhoe to C.L. Bridges under a "transaction of lease," but rather, as found by the trial court, he purportedly sold the backhoe outright, in violation of the terms of the lease agreement. Thus, C.L. Bridges did not receive the leasehold interest held by Goade as a result of the sale. Similarly, Goade was not a "merchant," and so R.C.1310.33(B) does not bestow a leasehold interest on either C.L. Bridges or Midgley.
The trial court, in rendering judgment in favor of Midgley and Advanced Dirt Works, applied the common law doctrine of equitable estoppel and determined that "slight additional circumstances" beyond Goade's mere possession of the backhoe clothed him with apparent authority to convey good title to C.L. Bridges and estopped Martin Equipment from asserting its claim of good title. The term "slight additional circumstances" is gleaned from Metalworking Machinery Co. v. Fabco, Inc. (1984), 17 Ohio App.3d 91,93, 17 OBR 152, 477 N.E.2d 634, where the court of appeals, quoting American Jurisprudence 2d (1966) 686, Estoppel and Waiver, Section 63, said:
 "Although mere possession and control of personal property are not ordinarily sufficient to estop the real owner from asserting his title against a person who has dealt with the one in possession on the faith of his apparent ownership, slight additional circumstances may turn the scale against the owner and estop him from asserting title against one who has purchased the property in good faith. * * * "
(Emphasis added.)
Using this quote as its legal standard, the trial court found "slight additional circumstances" beyond mere possession, turning the scales against Martin Equipment and estopping it from asserting title, namely:
 A. The form of entrusting by Martin Equipment Company to Dennis Goade.
 B. The lack of documented controls over the use of the equipment by Dennis Goade.
 C. The lack of factual controls over the use of the equipment by Dennis Goade.
 D. The number of related transactions between Martin Equipment Company and Dennis Goade.
E. The portable nature of the equipment involved.
In appealing from the judgment of the trial court, Martin Equipment first argues that R.C. 1302.44 supersedes the common law, particularly the common law doctrine of equitable estoppel. We disagree.
The common law doctrine of equitable estoppel, as it would apply in this case, is described by the court of appeals in Patev. Elliot (1978), 61 Ohio App.2d 144, 146-147, 15 O.O.3d 275,400 N.E.2d 910, as follows:
 [Ogden v. Ogden (1854), 4 Ohio St. 182, 195] merely states a basic tenet of American property law: a purchaser of property acquires only as sound a title as was held by the seller. Because a thief has void title, anyone possessing superior rights to the property may recover possession from the thief or a subsequent purchaser.
 This rule has its limitations, however. If the owner of property purposely clothes another with the appearance of ownership, equity requires that the owner be estopped from asserting title as against a subsequent bona fide purchaser. * * *
Martin Equipment suggests that the codification of the Uniform Commercial Code forbids a trial court from determining whether an owner clothed another with the appearance of ownership, thereby precluding him from asserting his title.
The Official Code Comments to U.C.C. Section 2-403(1) states, "[T]he policy of this Act expressly providing for the application of supplementary general principles of law to sales transactions wherever appropriate joins with the present section to continueunimpaired all rights acquired under the law of agency or ofapparent agency or ownership or other estoppel, whether based onstatutory provisions or on case law principles." (Emphasis added.) Further, Ohio courts have applied the equitable estoppel doctrine along with R.C. 1302.44 after the codification of the Uniform Commercial Code. See Metalworking Machinery Co., supra,17 Ohio App. 3d at 93. Accordingly, we reject Martin Equipment's suggestion that the common law doctrine of equitable estoppel is no longer applicable in determining good title in the sale of commercial goods.
Martin Equipment next argues that the trial court misconstrued the language from Metalworking Machinery Co. and applied the wrong legal standard for determining equitable estoppel.
The court of appeals in Metalworking Machinery Co. addressed the issue of whether mere possession of goods is a sufficient basis to estop the original owner from asserting good title. In doing so, the court of appeals found its answer in 42 Ohio Jurisprudence 3d (1983) 85, Estoppel and Waiver, Section 54, which states, "It is only when the owner, by his own affirmative act, has conferred the apparent title and absolute ownership upon another, upon the faith of which the chose in action has been purchased for value, that he is precluded from asserting his real title." Metalworking Machinery Co., supra, 17 Ohio App.3d at 93. The court of appeals searched the record for some affirmative act on which to base estoppel, but found none. Id.
The legal standard expressed in Metalworking Machinery Co. is consistent with prior case law requiring some affirmative act on the part of the original owner. See Combes v. Chandler (1877),33 Ohio St. 178, 185, citing Davis v. Bechstein, 69 N.Y. 442; see also Hartford Accident Indemnity Co. v. Feilbach Co. (N.D.Ohio 1941), 39 F. Supp. 740, 742 ("Before the owner could be estopped, he must have given the wrong-doer the indicia of ownership or title."). Thus, we must conclude that the trial court erred in finding "slight additional circumstances" from mere possession rather than from an affirmative act by Martin Equipment that clothed Goade with apparent ownership of the backhoe.
Midgley and Advanced Dirt Works argue that the record supports the trial court's finding of additional circumstances and, assumedly, would support a finding of an affirmative act on the part of Martin Equipment. More specifically, they maintain that the following facts suggest that Martin Equipment clothed Goade with apparent ownership of the backhoe:
 1. Martin Equipment leased to Goade four backhoes, valued at around $200,000; and
 2. Martin Equipment failed to follow up with Goade after the execution of the leases on a regular basis to confirm the location and use of the backhoes; and
 3. Martin Equipment failed to update the ownership records maintained by the manufacturer, John Deere, which may have prompted Martin Equipment to verify the location and use of the backhoes; and
 4. Martin Equipment did not have any measures or controls, other than the written lease, to prevent Goade from selling the backhoes to third parties.
Martin Equipment maintains that the written lease specifically indicates that the lessee, Goade, did not have the authority to sell or to sub-lease the backhoe. In addition, the lease indicates the intended use, hours of operation, and location, by county, of the backhoe. Martin Equipment further notes that they conducted a preliminary background investigation of Goade with respect to the nature and viability of his business before they leased the backhoes to him. Finally, the record indicates that Goade was current on his lease payments to Martin Equipment for the first five months that he leased the backhoe, including the four months after Goade had sold the backhoe to C.L. Bridges.
After reviewing the record, we conclude that Martin Equipment did not engage in any affirmative act that conferred upon Goade apparent authority to convey ownership of the backhoe. Other than to convey possession, which we have determined to be insufficient for the purposes of equitable estoppel, Martin Equipment did not entrust Goade with any indicia of ownership. Permitting Goade to use the backhoe in a distant location was within the normal scope of a leasing arrangement, particularly for heavy construction machinery. Martin Equipment's failure periodically to verify the location and use of the backhoe did not clothe Goade with the authority to sell it.
Midgley and Advanced Dirt Works suggest that Martin Equipment was negligent in monitoring and enforcing the terms of its lease and is now estopped from asserting ownership of the backhoe.
In Pate, supra, 61 Ohio App.2d at 147, the court of appeals observed the following:
 While it is true that estoppel may rest upon the negligence of the owner of property, such negligence must amount to more than mere carelessness. See 28 American Jurisprudence 2d 683, Estoppel and Waiver, Section 61. In People's Trust Co. v. Smith (1915), 215 N.Y. 488, 491, 109 N.E. 561, 562, Judge Cordozo summarized this area of the law as follows: "To make out an estoppel on that ground, it is not enough to show that the owner was careless. He must have been careless in respect of some duty owing to the [bona fide
purchaser] or the public * * *."
Although Martin Equipment, in hindsight, may have been careless in the manner in which it entrusted the backhoe to Goade, such carelessness does not amount to a breach of a legal duty owing toward C.L. Bridges or Midgley or the public. Indeed, Midgley and Advanced Dirt Works are silent as to any specific precaution that Martin Equipment could have taken to prevent Goade from absconding with the backhoe. Moreover, the record indicates that the purportedly negligent acts committed by Martin Equipment in monitoring and enforcing the lease had no causal connection with Goade's unauthorized sale of the backhoe to C.L. Bridges and, later, to Midgley. Goade leased the backhoe on July 14, 1995. Within the next several weeks, Goade had sold the backhoe to C.L. Bridges. On August 10, 1995, Midgley purchased the backhoe from C.L. Bridges. During this one-month period, Goade was current in his lease payments and continued to make such payments for the following four months. None of Martin Equipment's alleged acts or omissions would have altered the causal chain of events leading up to Goade's conversion of the backhoe. Accordingly, we decline to apply the equitable estoppel doctrine, grounded in negligence, based on the facts of this case.
Midgley and Advanced Dirt Works suggest that the trial court erred in making specific findings of fact relating to the nature of the transaction between Martin Equipment and Goade, the nature of the transaction between Goade and C.L Bridges, and Goade's status as an excavation contractor. We conclude, however, that the trial court's findings are well supported by the record, and we will not disturb these findings on appeal. Myers v. Garson
(1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742.
Based on the foregoing, we find that the trial court erred in applying the equitable estoppel doctrine in this case. Midgley's and Advanced Dirt Works's sole Assignment of Error is sustained.
 III
Midgley's and Advanced Dirt Works's sole assignment of error having been sustained, the judgment of the trial court isReversed, and this cause is Remanded for further proceedings consistent with this opinion.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Charles R. Saxbe
Donald C. Brey
Richard D. Brown
Hon. Roger Wilson